IN the INTEREST OF R.H., III, a person under the age of 18: T.H., Appellant,

v.

LA CROSSE COUNTY, Respondent. [Case No. 88–0372.]

IN the INTEREST OF L.H., a person under the age of 18: L.H., Appellant,

v.

STATE of Wisconsin, Respondent. [Case No. 88–0605.]†

Court of Appeals

*Nos. 88–0372, 88–0605. Submitted on briefs June 16, 1988.— Decided September 29, 1988.*

(Also reported in 433 N.W.2d 16.)

† Petition to review granted.

For the appellant the cause was submitted on the briefs of *Eugene R. Thompson,* of Madison.

For the respondent the cause was submitted on the brief of *Meryl R. Manhardt,* assistant district attorney.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J. In these appeals under the Children's Code we construe secs. 48.30(6) and 48.31(7), Stats. We conclude that the thirty-day time limit in each section is mandatory. In each case the trial court lost competency to exercise its jurisdiction to hear the petition initiating proceedings under ch. 48 because it did not observe the time limit. In *In the Interest of L.H. v. State,* we also decide that L.H. did not consent to a continuance of the dispositional hearing. We remand with directions to vacate the dispositional orders and dismiss the petitions.

## I.

## BACKGROUND

L.H. pled no contest to a delinquency petition. Her dispositional hearing was held thirty-eight days after the plea hearing. Section 48.30(6), Stats.,[1] provides that the trial court "shall set a date for the dispositional hearing which ... is ... no more than 30 days from the plea hearing for a child who is not held in secure custody." In *In Interest of R.H., III. v. La Crosse County,* the court, after a fact-finding hearing before a jury, found that R.H., T.H.'s son, was a child in need of protection and services. The dispositional hearing was held thirty-two days after the fact-finding

---

[1]Section 48.30(6), Stats., provides:

> If a petition is not contested, the court shall set a date for the dispositional hearing which allows reasonable time for the parties to prepare but is no more than 10 days from the plea hearing for the child who is held in secure custody and no more than 30 days from the plea hearing for a child who is not held in secure custody. If all parties consent the court may proceed immediately with the dispositional hearing. If a citation is not contested, the court may proceed immediately to enter a dispositional order.

hearing. Section 48.31(7)[2] provides that the trial court "shall set a date for the dispositional hearing which ... is ... no more than 30 days from the fact-finding hearing for a child not held in secure custody." Neither R.H. nor L.H. was held in secure custody. In neither case was a continuance ordered under sec. 48.315.

If the thirty-day time limit in each section is mandatory, failure of the trial court to observe the time limit deprived it of competency to exercise its jurisdiction to hear the matter. *State v. Rosen,* 72 Wis. 2d 200, 208, 240 N.W.2d 168, 172 (1976). We conclude that the time limit in each statute is mandatory.

## II.

## RULE OF CONSTRUCTION: WHEN TIME LIMITS ARE MANDATORY

■

The general rule is that the word "shall" in a statute setting a time limit is presumed to be mandatory. *Karow v. Milwaukee County Civil Serv. Comm.,* 82 Wis. 2d 565, 570, 263 N.W.2d 214, 217 (1978). Statutes setting time limits have, however, often been held to be directory despite the use of the word "shall." *Id.* at 571, 263 N.W.2d at 217. The Wisconsin Supreme Court has said that "a statute prescribing

---

[2]Section 48.31(7), Stats., provides:

> At the close of the fact-finding hearing, the court shall set a date for the dispositional hearing which allows a reasonable time for the parties to prepare but is no more than 10 days from the fact-finding hearing for a child in secure custody and no more than 30 days from the fact-finding hearing for a child not held in secure custody. If all parties consent, the court may immediately proceed with a dispositional hearing.

the time within which public officers are required to perform an official act is merely directory, unless it denies the exercise of power after such time, or the nature of the act, or the statutory language, shows that the time was intended to be a limitation." *State v. Industrial Comm.,* 233 Wis. 461, 466, 289 N.W. 769, 771 (1940), quoted in *Karow,* 82 Wis. 2d at 571, 263 N.W.2d at 217.

The language in secs. 48.30(6) and 48.31(7), Stats., that the court shall set a hearing date which "is no more than" a specified number of days from the previous event, implies that the time is intended to be a limitation. Where a time limit has been held to be directory, the statute simply provided that the act "shall" be done within a specified time. *See,* for example, *Galewski v. Noe,* 266 Wis. 7, 16, 62 N.W.2d 703, 708 (1954) (decision of trial court "shall be ... filed" within sixty days after submission), *State ex rel. Johnson v. Nye,* 148 Wis. 659, 669, 135 N.W. 126, 129 (1912) (governor "shall appoint" on or before specified date), cited in *Karow,* 82 Wis. 2d at 571 n.6, 263 N.W.2d at 217.

When similar language has been used in other statutes, the context of the legislation has suggested an urgency in accomplishing the directed task. *See* sec. 40.06, Stats. (payments to public employee trust fund of department and agency delinquencies), sec. 66.024, Stats. (filing petition for annexation referendum in circuit court), secs. 101.22, 101.222, Stats. (filing petitions alleging discrimination in housing and public places of accommodation and amusement), sec. 196.795, Stats. (reporting by public utility holding company of formation, etc. of nonutility affiliate). As we will shortly show, the legislative history of the Children's Code shows that the legislature considers

that there is an urgency in the prompt disposition of ch. 48 petitions affecting children and their parents.

We recognize, however, that statutory time limits may be construed as directory if necessary to carry out the legislature's clear intent. *Karow,* 82 Wis. 2d at 571, 263 N.W.2d at 217. We therefore turn to the legislative history of secs. 48.30(6) and 48.31(7), Stats., to determine whether the time limit in either of these sections must be construed as directory in order to carry out the intent of the legislature.

## III.

## LEGISLATIVE HISTORY OF CHILDREN'S CODE

Chapter 48, the Children's Code, was substantially revised by ch. 354, Laws of 1977 (1977 Assembly Bill 874). The revision culminated efforts over several legislative sessions. Charles M. Hill, Sr., Executive Director, Wisconsin Council on Criminal Justice, *Analysis of AB 795/Assembly Substitute Amendment 1, Proposed Children's Code Revisions,* "Historical Background and Current Status," March 5, 1976. Legislative History Record, 1975 Assembly Bill 795, Folder 1, Wisconsin Legislative Council. 1975 AB 795 was drafted by a coalition of the Governor's Advocacy Committee on Children and Youth, the Board of Juvenile Court Judges, the Council on Human Concerns, the state department of health and social services, child welfare agencies, and legal services attorneys. *Id.* The bill was introduced at the request of the state Judicial Council and the Governor's Advocacy Committee. The drafting records of the Wisconsin legislative reference bureau show that 1975 AB 795 was the document from which 1977 AB 874 was

drafted. Many of the 1975 revisions were included without change in 1977 AB 874.

In the development of the revised Children's Code, input was received from numerous other interested organizations and individuals. *See* Statement of State Representative Peter Tropman to Assembly Judiciary Committee, July 19, 1975 and Tropman, *Background Information on Assembly Bill 795 and a Description of Changes Incorporated in Assembly Substitute Amendment* 1, February 2, 1976, Legislative History Record, 1975 AB 795, Folder 1, Wisconsin Legislative Council; Staff Memorandum, *Description of Engrossed 1977 Assembly Bill 874, The Proposed Revision of the Children's Code,* Legislative History Record, 1977 AB 874, Wisconsin Legislative Council.

Contemporaneous with the earlier legislative activity the Wisconsin Council on Criminal Justice considered and adopted juvenile justice standards and goals. Special Study Committee on Criminal Justice Standards and Goals, Wisconsin Council on Criminal Justice, *Juvenile Justice Standards and Goals* (December 1975). A comparison of these standards and goals with 1977 AB 874 makes it evident that their general objectives were considered in the drafting of 1977 AB 874.[3] Concern for the protection of the child's due process rights is reflected in these standards and goals. Subgoal No. 12.4: *Time Limits,* states:

---

[3]The report of the Special Study Committee adopted by the Wisconsin Council on Criminal Justice states: "The Juvenile Justice Standards and Goals ... are not merely policy tools for the WCCJ. This report is, in essence, *a mandate to the State legislature,* local police departments, municipalities, judges, and the private sector to look towards new approaches in their relationships with juveniles." *Juvenile Justice Standards and Goals, supra,* at 13. (Emphasis added.)

To ensure speedy adjudication of juvenile matters, time limits shall be set as to the maximum time allowed between identified critical stages within the adjudication process.

*Juvenile Justice Standards and Goals, supra,* at 80.

The proponents of revision of the Children's Code perceived that changes were needed to modernize an inoperable juvenile justice system, to treat children who are not law violators in the least drastic placement, and to protect the child's constitutional rights, including the right to due process. Tropman, *Background Information on Assembly Bill 795, supra,* at 2–3.

It is apparent from several sources that the legislature accepted that it was necessary to revise the Children's Code to assure the constitutional rights of children.[4] In his analysis of 1975 AB 795, the executive director of the Wisconsin Council on Criminal Justice, stated: "The revision [of the Children's Code] reflects an attempt to codify the four major U.S. Supreme Court decisions of *Kent v. U.S.,* 383 U.S. 541 (1966), *In re Gault,* 387 U.S. 1 (1967), *In re Winship,* 397 U.S. 358 (1970), and *McKeiver v. Pennsylvania,* 403 U.S. 528 (1971), along with the numerous state and lower federal court decisions made during the last decade. The present Children's Code in no way reflects the philosophical shift toward due process that has oc-

---

[4]We do not imply that the legislature in enacting the revised Children's Code was not concerned with the due process rights of parents. The legislative history makes plain, however, that the legislature was primarily motivated to address the concerns expressed in numerous court decisions that the *parens patriae* approach to adjudicating the rights of children denied the child procedural due process.

curred as a result of these decisions." Hill, *Analysis of AB 795, supra* p.2.

The principal legislative proponent of revision of the Children's Code stated: "In the wake of these decisions [*Gault, Winship,* and *Kent*], not only is much of Wisconsin's present Children's Code inoperable, but many new procedures are required that are not explicitly provided for in our statutes." Tropman, *Statement to Assembly Judiciary Committee, supra.*

The legislative council's introduction to its description of engrossed 1977 AB 874 states: "Assembly Bill 874 is a proposal to bring statewide uniformity to the operation of the juvenile court and to update the current statutes by codifying federal and state court decisions rendered during the past twenty-two years." *Description of Engrossed Assembly Bill 874, supra.*

The analyses of 1977 AB 874 by the legislative council and the legislative reference bureau confirm that the legislature intended to protect the child's right to procedural due process, which it believed was mandated by judicial decision, by ensuring a speedy disposition of allegations affecting the child. The legislative council's memorandum describing 1977 engrossed AB 874 includes the following:

4. COURT PROCEDURES.

B. *Time Limits*—

. . . .

A standard clause throughout the bill controls the maximum time allowed from one hearing to the next . . . .

. . . .

L. *Delays*—The bill facilitates the orderly administration of the court by requiring a showing of

good cause on the record before the court may grant a continuance.

*Description of Engrossed Assembly Bill 874, supra,* at 4, 5.

The analysis of the bill by the legislative reference bureau includes the following:

D. COURT PROCEDURES

. . . .

4. *Time Limits.* Strict statutory time periods are imposed controlling initiation of a petition as well as the amount of time which can elapse between one hearing and the next.

Engrossed 1977 AB 874, *Analysis by the Legislative Reference Bureau,* p. 3.

The legislative histories of secs. 48.30(6) and 48.31(7), Stats., strongly suggest that "shall" in each section is to be construed as mandatory.

## IV.

## ADDITIONAL AIDS TO CONSTRUCTION

### A. *Legislative Statement of Consequence of Failure to Observe Time Limits*

In *L.H.,* the state argues that the legislature's statement that dismissal with prejudice is the consequence of failure to observe the time limits in sec. 48.24(5), Stats., negates an intent that other provisions of ch. 48 impose mandatory time limits. Section 48.24(5) requires that the intake worker process referral information within forty days.

A legislative statement as to the consequences of untimeliness is one factor to consider in determining

whether the statute is mandatory or directory. *Karow,* 82 Wis. 2d at 572, 263 N.W.2d at 217. The state points out that sec. 48.30(6), Stats., does not state the consequence of failure to observe its time limits [nor does sec. 48.31(7)] while sec. 48.24(5) requires dismissal with prejudice if a petition initiating ch. 48 proceedings is not timely referred or filed.

When the legislature decided that with-prejudice dismissal was the appropriate consequence of failure to timely process referral information,[5] it was necessary to spell that out because the general rule is that failure to observe a mandatory time limit only requires dismissal without prejudice. *See State v. May,* 100 Wis. 2d 9, 11, 301 N.W.2d 458, 459 (Ct. App. 1980) (failure to file criminal information within statutory time period entitles defendant to have action dismissed without prejudice). We do not, therefore, give sec. 48.24(5), Stats., the significance the state suggests in construing sec. 48.30(6). Nor do we give sec. 48.24(5) significance in construing sec. 48.31(7).

---

[5]The reason for the drastic consequence of with-prejudice dismissal under sec. 48.24(5), Stats., is revealed in the commentary of the Wisconsin Council on Criminal Justice to the intake standard, 12.4(c), which imposes a time limit on filing a petition upon receipt of referral information. The Council's commentary states:

Standard 12.4(c) is designed to eliminate the opportunity for the prosecutorial abuse of not bringing charges until several acts have been committed in order to increase the chance of a more severe disposition.

*Juvenile Justice Standards and Goals, supra,* at 81.

## B. *Other Factors*

Other factors to be considered in deciding whether the legislature intends a statutory time limit to be mandatory or directory are (1) the consequences of one construction or the other, (2) the nature of the statute, and (3) "the evil to be remedied, and the general object sought to be accomplished" by the legislature. *Karow*, 82 Wis. 2d at 572, 263 N.W.2d at 217 (quoting *Worachek v. Stephenson Town School Dist.*, 270 Wis. 116, 120, 70 N.W.2d 657, 659 (1955)).

First, the consequences resulting from a construction of the thirty-day time limit in each sec. 48.30(6) and 48.31(7), Stats., as mandatory are ameliorated by sec. 48.315. Section 48.315 excludes from those time limits many periods of delay resulting from other legal actions concerning the child and consideration of other matters which may require a continuance of the dispositional hearing. The child is protected because he or she may obtain a discretionary continuance under sec. 48.315(1)(b).

The consequences of a construction of the time limit in each sec. 48.30(6) or 48.31(7), Stats., as directory, however, are serious. The Wisconsin Supreme Court has said that a time limit may be construed as directory when allowing something to be done after the time prescribed will not result in an injury. *Appleton v. Outagamie County*, 197 Wis. 4, 9, 220 N.W. 393, 396 (1928), cited in *Karow*, 82 Wis. 2d at 572, 263 N.W.2d at 217. The legislative history of the Children's Code shows that the legislature considers that strict time limits between critical stages within the adjudication process are necessary to protect the due process rights of children and parents. The

dispositional hearing on a delinquency petition or a CHIPS (child in need of protection or services) petition is a critical stage within the adjudication process.

Second, there is nothing in the nature of either sec. 48.30(6) or 48.31(7), Stats., which suggests that the legislature intended that the thirty-day time limit contained therein shall be directory.

Third, "the evil to be remedied, and the general object sought to be accomplished" by the revision of the Children's Code confirm that the legislature intended the thirty-day time limit in each sec. 48.30(6) and 48.31(7), Stats., to be mandatory. Section 48.01(1) provides that one of the express legislative purposes of the Children's Code is: "(a) To provide judicial and other procedures through which children and all other interested parties are assured fair hearings and their constitutional and other legal rights are recognized and enforced, while protecting the public safety." This is consistent with the legislative history of the Code and with the juvenile justice goals of insuring for juveniles and parents due process in the juvenile court. *See Juvenile Justice Standards and Goals,* No. 12, *supra,* at 77. The Wisconsin Council on Criminal Justice's commentary as to this goal states:

> The Sixth Amendment to the U. S. Constitution guarantees that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ..." Courts which have faced the question of the applicability of the right to the juvenile have uniformly agreed that speedy trial guarantee should be accorded to juveniles. *Piland v. Clark County Juvenile Court,* 457 P.2d 523 (Nev. 1969), *State v. Henry,* 434 P.2d 692 (N.M. 1967).

34

*Id.* at 81. This goal could be undercut if the time limits between the identified critical stages within the adjudication process are not observed.

In construing sec. 48.365(6), Stats., permitting the court, after hearing, to extend a dispositional order the Wisconsin Supreme Court stated: "This review of the juvenile process provided for in ch. 48, Stats., leads us to the conclusion that the legislature intended the process to be viewed as a continuum. The process begins with full procedural due process protections and such protections are also provided at least on a yearly basis . . . ." *In Interest of S.D.R.,* 109 Wis. 2d 567, 575, 326 N.W.2d 762, 766 (1982).

For these reasons we construe as mandatory the thirty-day time requirement in each sec. 48.30(6) and 48.31(7), Stats. Because the dispositional hearing in each case before us was not held within the time required by the statute, the trial court lost competency to exercise its jurisdiction to hear the petition.

## V.

## CHIPS TIME LIMIT AS DIRECTORY

The dissent agrees that we have reached the right result in *In the Interest of L.H.,* who is alleged to be delinquent, but argues that the time limit in sec. 48.31(7), Stats., when applied to R.H., should be directory rather than mandatory because his liberty interests are "little affected." The most obvious objection to this construction is the resulting lack of uniformity in setting dates for dispositional hearings. If a fact-finding hearing is required on a delinquency petition, the thirty-day time limit in sec. 48.31(7) in which to set the dispositional hearing would be

mandatory. If, however, a fact-finding hearing is required on a CHIPS petition, the time limit would be directory. This result is unacceptable.

The reasons for observance of strict time limits are at least as compelling in CHIPS proceedings as in delinquency proceedings. In CHIPS proceedings the child frequently, as is R.H.'s situation, has been removed from the home. The Wisconsin Supreme Court stated in *Adoption of Tachick,* 60 Wis. 2d 540, 554-55, 210 N.W.2d 865, 872 (1973):

> The literature on the problem of separation trauma of a young child is vast and interesting. It is stated the important thing is not the mother in a biological sense but the mother figure, for it is the mother figure with which the child becomes totally identified and it is the mother figure whoever that might be that the child constantly turns to for nourishment and other physical comforts, love and security. It is stated that separation during the early years of an infant's life from the mother figure causes apprehension, depression, withdrawal, and rejection of environment, slow movement, and stupor, anorexia, and weight loss, insomnia, eczema, and respiratory infections, and continued separation may bring on further withdrawal, persistent autoerotic activity, frozen rigidity, catatonia and cachexia. [Footnotes omitted.]

It has also been stated:

> The risks [to the child] are greatest when intervention results in removal of a child from his family. It is well recognized by psychiatrists that "so far as the child's emotions are concerned, interference with [parental] tie[s], whether to a 'fit' or 'unfit' psychological parent, is extremely painful." Continuity of relationships is extremely im-

portant to children. Removing a child from his family may cause serious psychological damage—damage more serious than the harm intervention is supposed to prevent. [Footnotes omitted.]

Wald, *State Intervention on Behalf of "Neglected" Children: A Search for Realistic Standards,* 27 Stan. L. Rev. 985, 993–94 (1975) (quoting J. Goldstein, A. Freud & A. Solnit, *Beyond the Best Interests of the Child* pp. 5–6 (1973)).

Children often view foster-home placement as a punishment for something they have done. Goldstein, *supra,* at 11–12. A guideline these authors suggest is that placement decisions should reflect the child's, not the adult's, sense of time. *Id.* at 40. Goldstein, et al. say: "[T]o avoid irreparable psychological injury, placement, whenever in dispute, must be treated as the emergency that it is for the child." *Id.* at 43.

"A child's time is not an adult's time." J.R. Milligan and E. Loth, *Permanency Planning for Children (A New Ballgame in Appellate Courts),*[6] 4 Appellate Court Administration Rev. 37, 38 (1982–83).

The Model Statute for Termination of Parental Rights provides:

> Unlike adults, who measure the passing of time by clocks and calendars, children have their own built-in time sense based on the urgency of their instinctual and emotional needs. What seems like a short wait to an adult can be an intolerable separation to a young child to whom a week can seem like a year and a month forever.
>
> . . . .

---

[6]Permanency planning was mandated by the legislature in 1984. Sec. 48.38, Stats., 1983 Wis. Act 399.

Section 1. The purpose of this act is ... to acknowledge that the time perception of children differs from that of adults. ...

*National Bench Book for Juvenile Courts* 154 (Hon. L.G. Arthur rev. ed. 1979).

By concluding that the time limit for holding a dispositional hearing is mandatory, we do not interfere with the right of the appropriate authority to take a child into custody when the welfare of the child demands it. All that our decision requires is that after the child is taken into custody the time limit imposed by the legislature on a critical stage of the adjudication process be observed.

The dissent is properly concerned that it may not be in R.H.'s best interest to be returned to his mother. Because the question is not before us, we express no opinion as to whether vacating the disposition order and dismissing the CHIPS petition will automatically restore custody of R.H. to his mother.

The dissent errs in deciding the important question of whether the time limit in sec. 48.31(7), Stats., is directory or mandatory solely upon the facts of this case. That question should not be decided on an ad hoc basis. The best interests of the child will be protected if the time within which the dispositional hearing shall be set is mandatory, whether the petition is a delinquency petition or a CHIPS petition.

## VI.

## CONSENT TO CONTINUANCE

In *L.H.*, the state contends that by her silence L.H. consented to a continuance. Section 48.315, Stats., provides:

(1) The following time periods shall be excluded in computing time requirements within this chapter:

. . . .

(b) Any period of delay resulting from a continuance granted at the request of or with the consent of the child and counsel.

(2) A continuance shall be granted by the court only upon a showing of good cause in open court on the record and only for so long as is necessary, taking into account the request or consent of the district attorney or the parties and the interest of the public in the prompt disposition of cases.

A continuance can be granted only "on the record" for good cause. There was no such showing in this case.[7]

## VII.

## OTHER ISSUES

In view of our holding, it is not necessary to consider the effect in *L.H.* of the trial court's failure to

---

[7]We note that a publication of the State Bar of Wisconsin states that ch. 48, Stats., time limits cannot be waived.

It has been the practice in some jurisdictions for parties, their counsel, or the guardian ad litem to "waive" time limits. There is no provision under the Children's Code for the waiver of time limits. The only provision for delays, continuances, or extensions are those set forth in section 48.315. Even under the provisions of this statute [sec. 48.315], a waiver is not permitted, as continuances are to be granted by the court "only for so long as is necessary." Wis. Stats. sec. 48.315(2).

J. Alschuler, S. Bach, R. Froemming, T. Glowacki, D. Greenley, and J.S. Newton, *ATS-CLE: The Guardian ad Litem Handbook,* sec. 4.18, p. 4–17, State Bar of Wisconsin (1987).

properly take her plea. In *R.H.,* our conclusion that the trial court lacked competency to exercise its jurisdiction over the CHIPS petition extends to its oral finding of physical abuse and consequent written order. We therefore do not consider R.H.'s argument that the trial court could not make such finding when the jury was the factfinder.

*By the Court.*—Causes remanded with directions to vacate the dispositional orders and dismiss the petitions without prejudice.

DYKMAN, J.   (*dissenting in part*).

### FACTS

T.H. is R.H.'s mother. At the fact-finding hearing in this case, the jury heard a La Crosse county social worker testify that relatives of R.H. called his agency in May 1987, after R.H. was hospitalized because he drank a substantial amount of paint thinner while T.H. was visiting with her boy friend. The social worker spoke with T.H., and told her that in his opinion, this incident was evidence that T.H. was not adequately supervising R.H. He further explained that continued instances of inadequate supervision or neglect could lead to a court referral. He testified that because of prior history with T.H., the paint thinner incident was of greater concern to him.

A nurse and parent aide testified that she was assigned to assist T.H. with her parenting skills. The nurse made seven to nine visits to T.H.'s apartment between July 13 and August 10, 1987. On August 7, 1987, at about 10 a.m., she saw R.H., nineteen months old, playing unattended at the top of a long, steep staircase. The door to T.H.'s apartment was not

lockable. The nurse felt that R.H. could easily have suffered a fatal fall.

T.H. did not respond when the nurse knocked on her door. The nurse therefore picked R.H. up and took him into T.H.'s apartment. R.H. picked up and ate cereal which was scattered on the kitchen floor. While attempting to arouse T.H. by calling and yelling, the nurse observed that R.H. had had a diaper on for a prolonged period of time and had dried feces on his back. His shirt was too small and was filthy. She observed R.H.'s bed to be a bare mattress on a bedroom floor. After forty-five minutes, the nurse became angry and shouted at T.H. to get up. T.H. did so, and the nurse explained that R.H. needed cleaning and changing. T.H. did not respond.

On August 10, the nurse again visited T.H.'s apartment. Again she noticed that R.H.'s diaper had not been changed for a prolonged period, and that his clothing was urine soaked. She asked T.H. to change the diaper, but T.H. did not do so. The nurse attempted to get T.H. to recognize the need to keep R.H. clean, a matter she and T.H. had discussed since her first visit in July. As they were talking, the nurse noticed that R.H. was drinking a cup of what she assumed was apple juice, but that it had a foul odor. R.H. finished that cup, left and returned with more of the same liquid. The nurse asked T.H. what her son was drinking, and T.H. giggled. Then T.H. said to R.H.: "[R.H.] don't do that. You're such a pig." The nurse asked: "What is this?" and T.H. answered: "He drinks out of the toilet." T.H. then left the room, came back, and explained that the toilet contained fecal material because someone had not flushed it. The nurse explained that T.H. could not let that happen, but T.H. was apathetic about the situation. She believed R.H.

had an excessive thirst. Because of T.H.'s reactions and answers, the nurse concluded that R.H. habitually drank from the toilet. The nurse never saw T.H. nurture, hug or kiss her son, or converse with him.

The jury deliberated for forty minutes and found that T.H. neglected, or refused or was unable for reasons other than poverty to provide necessary care, food, clothing, medical care or shelter so as to seriously endanger the physical health of R.H.

Thirty-two days after the jury's verdict, the court held a dispositional hearing and signed an order transferring R.H.'s custody to the La Crosse County Human Services Department. The record does not explain why the hearing was not held within thirty days of the jury's verdict except that the trial court said: "The parties can contact my secretary to get the date and time of that hearing that is mutually convenient to all parties." Section 48.31(7), Stats., provides that the court shall set a date for the dispositional hearing no more than thirty days from the fact-finding hearing.

## METHOD OF ANALYSIS

*Karow v. Milwaukee County Civil Serv. Comm.*, 82 Wis. 2d 565, 263 N.W.2d 214 (1978) sets out the procedure appellate courts are to follow when determining the effect of a failure to follow statutory time limits. The factors we are to consider are:

(1) "shall" is presumed mandatory;

(2) the legislature's clear intent;

(3) the legislature's failure to state the consequences of noncompliance;

(4) whether the failure to observe time limits results in an injury or wrong;

42

(5) the consequences resulting from one construction or the other;

(6) the nature of the statute;

(7) the evil to be remedied and the general object to be accomplished by the legislature.

*Id.* at 570–72, 263 N.W.2d at 217–18.

These consolidated cases show that the *Karow* factors apply differently in CHIPS proceedings than in delinquency proceedings. The focus of a CHIPS proceeding is whether a child needs protection from conditions that pose a danger to the child. Delinquency proceedings add other considerations, including whether the public needs protection from a juvenile. A juvenile's liberty interests are at risk in delinquency proceedings, but are little affected by ordinary CHIPS proceedings. I am therefore not persuaded that a statute which we conclude is mandatory in a delinquency proceeding must also be mandatory in a CHIPS matter. I therefore agree with the majority's mandate in *In the Interest of L.H.,* and limit this dissent to *In the Interest of R.H.*

### "KAROW" FACTORS APPLICABLE HERE

The legislature's intent is that the provisions of the Children's Code "shall be liberally construed to effect the objectives contained in this section. The best interests of the child shall always be of paramount consideration, but the court shall also consider the interest of the parents ...." Sec. 48.01(2), Stats. Construing "shall" as used in sec. 48.31(7) as directory carries out the legislature's clear intent to consider paramount the best interests of the child. Also, the legislature did not provide that failure to follow the time limits in sec. 48.31(7) deprives a court of compe-

tency to exercise its jurisdiction. This omission supports construing the time limit as directory.

Because the majority construes the sec. 48.31(7), Stats., time limit as mandatory, R.H. will now be returned to T.H., even though the evidence is overwhelming that this will be harmful to R.H. and a jury found that T.H.'s neglect seriously endangered R.H.'s health. This results in an injury to R.H. and is contrary to the "paramount consideration" of ch. 48. The "evil to be remedied" is R.H.'s adjudicated dangerous situation. The "general object sought to be accomplished" is to remove R.H. from a dangerous environment and to provide T.H. with constructive directions on how to improve her role as R.H.'s mother in order to regain R.H.'s custody.

Construing the sec. 48.31(7), Stats., thirty day time limit as directory works an injury or wrong to R.H.'s "fundamental liberty interest … in the care, custody, and management of [her] child [which] does not evaporate simply because [she has] not been [a] model parent [ ] ...." *Santosky v. Kramer,* 455 U.S. 745, 753 (1982). However, "where the parent's interest and the child's interest conflict, the child's interest must control." *In Matter of Adoption of R.P.R.,* 95 Wis. 2d 573, 578, 291 N.W.2d 591, 594 (Ct. App.) (footnote omitted), *rev'd on other grounds,* 98 Wis. 2d 613, 297 N.W.2d 833 (1980). The injury which will result to R.H. upon his return to T.H. is greater than whatever injury the two-day delay caused to T.H., who failed to attend the dispositional hearing.

There are other consequences of the majority's conclusion. La Crosse county paid R.H.'s guardian ad litem $670 in attorney fees. The corporation counsel's salary, and the costs La Crosse county has expended for court personnel and jury fees are all wasted. If the

county repeats in another CHIPS proceeding what it did in the first one, the ultimate consequence is that we have put R.H., T.H., La Crosse county, the trial court, the three attorneys and the jury through a costly and unnecessary dress rehearsal. The next trial will be much like the last, and, judging from the evidence presented and the speed with which the jury reached its verdict, there is little prospect of a changed result.

The legislature has considered whether it is wise to reverse judgments for insubstantial errors at trial, and has enacted a "harmless error" rule. Section 805.18, Stats., provides: ·

(1) The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party.

(2) No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of drawing, selection or misdirection of jury, or the improper admission of evidence, or for error as to any matter of admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

We test for harmless error by considering whether the result would have been different had the error not occurred. *Helmbrecht v. St. Paul Ins. Co.*, 122 Wis. 2d 94, 131, 362 N.W.2d 118, 137 (1985). I find it difficult to believe that a different result would have occurred had the trial court entered its dispositional order two days earlier. The "consequences" factor of *Karow*

therefore weighs heavily in favor of holding sec. 48.31(7), Stats., to be directory because the error is harmless but the cost is extensive.

The majority bases its conclusion in part on *In Interest of S.D.R.,* 109 Wis. 2d 567, 326 N.W.2d 762 (1982), which holds that an untimely dispositional order infringes upon a juvenile's liberty interest in being free from involuntary confinement. *S.D.R.,* 109 Wis. 2d at 573 and 577, 326 N.W.2d at 765 and 767. The court's reasoning in *S.D.R.* explains why we should conclude that sec. 48.31(7), Stats., is directory in CHIPS proceedings. R.H. has no interest at all in being returned to an environment where he will be neglected or abused, let alone a liberty interest in such a "right." The majority ignores the reasons the *S.D.R.* court used in reaching its decision, and by doing so, inserts constitutional requirements into a statute where R.H.'s "rights," constitutional or otherwise, are to *avoid* abuse and neglect.

Nor is uniformity a reason to subject children to abuse or neglect. Trial courts hear cases of all types. Time limits in different types of cases are anything but uniform. Though the majority finds non-uniformity unacceptable, it gives no reason for that finding, and there is no reason for it. Our trial courts are capable of working with a myriad of time limits now— one more variation will make no difference.

This is not the first time we have considered whether a trial court's failure to comply with a time limit ousts the court of jurisdiction (or competency to exercise jurisdiction). In *Village of Elkhart Lake v. Borzyskowski,* 123 Wis. 2d 185, 193–94, 366 N.W.2d 506, 510 (Ct. App. 1985), we said:

> Section 343.305(8)(b), Stats., merely directs trial courts to render a decision as to the issues

involved within five days of the refusal hearing. The statute does not indicate that the trial court is divested of its jurisdiction if it fails to comply with the time requirement. The presumption in favor of retention of jurisdiction can be overcome only if the law in favor of divestiture is clear and unambiguous. Absent a clear and unambiguous indication from the legislature, we will not infer an intent on the part of the legislature to divest the trial court of jurisdiction when the time requirement of sec. 343.305(8)(b) is not met. (Citation omitted.)

Section 48.31(7), Stats., contains no clear and unambiguous indication that a thirty-two day wait between verdict and disposition divests the trial court of jurisdiction or competency to exercise jurisdiction.

### CONCLUSION

After examining the relevant *Karow* factors, and *Borzyskowski,* I conclude that the sec. 48.31(7), Stats., time limit should be construed to be directory rather than mandatory.[1] The trial court's failure to hold a dispositional hearing within thirty days should therefore not affect its competency to enter a dispositional order.

---

[1]However, the failure to meet the time limit is subject to an inquiry into whether there was a good faith effort to comply with the statute. *See In re J.L. W.,* 143 Wis. 2d 126, 132, 420 N.W.2d 398, 400–01 (Ct. App. 1988) (efforts of intake workers to meet ch. 48 deadlines subject to good faith analysis, even where statute provides for dismissal with prejudice if time limit not met). In this case, T.H. makes no claim of bad faith, and I do not address that question.