# IN RE the PATERNITY OF T.R.B.: J.F., Appellant,

## v.

## R.B. and T.B., Respondents.

Court of Appeals

*No. 90-2054-FT. Submitted on briefs January 7, 1991.—Decided February 12, 1991.*

(Also reported in 467 N.W.2d 553.)

On behalf of appellant, the cause was submitted on the briefs of *Ronald A. Haacke* of *Meyer & Haacke, S.C.* of Clintonville.

On behalf of respondents, the cause was submitted on the brief of *J.D. McKay* of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   J.F., a single man, appeals the dismissal of his paternity claim to a child born to a woman while she was married to another man.[1] The marriage is still intact, and this court previously remanded this action to the trial court for an evidentiary hearing to determine whether pursuit of a paternity action is in the child's best interests.[2] The trial court decided, after hearing evidence, that J.F.'s paternity claim is not in the child's best interests and dismissed the action. Because the findings upon which the trial court's decision rests are not clearly erroneous, we affirm.

In an action tried without a jury, the findings of fact by the trial court shall not be set aside on review unless clearly erroneous. Section 805.17(2), Stats. The trial court may state its findings orally on the record following the close of evidence. *Id.* This court will search the record for evidence to support the trial court's findings of fact. *In re Becker,* 76 Wis. 2d 336, 347, 251 N.W.2d 431, 435 (1977). Where the evidence supports the drawing of either of two conflicting inferences, the trial court

---

[1] This is an expedited appeal under Rule 809.17.

[2] *See* sec. 767.458(1m), Stats., which provides:

> In an action to establish the paternity of a child who was born to a woman while she was married, where a man other than the woman's husband alleges that he, not the husband, is the child's father, a party may allege that a judicial determination that a man other than the husband is the father is not in the best interest of the child. If the judge or court commissioner determines that a judicial determination of whether a man other than the husband is the father is not in the best interest of the child, no blood tests may be ordered and the action shall be dismissed.

and not this court must decide which inference to draw. *State v. Friday,* 147 Wis. 2d 359, 370–71, 434 N.W.2d 85, 89 (1989). Credibility and weight of the evidence is also for the trial court. *Posnanski v. City of West Allis,* 61 Wis. 2d 461, 465, 213 N.W.2d 51, 52–53 (1973).

What is in a child's best interests is a mixed question of law and fact. *In re R.P.R.,* 98 Wis. 2d 613, 618, 297 N.W.2d 833, 836 (1980). In determining the best interests of a child, the trial court and not the appellate court decides the weight accorded expert testimony. *Id.* at 619, 297 N.W.2d at 836.

The critical inference drawn by the trial court here was that this paternity action would disrupt an otherwise happy family that included the child at issue, T.R.B. The court chose to reject contrary evidence from J.F. as not credible.

The child's presumptive parents, R.B. and T.B., were married in 1983 and the child, T.R.B., was born in 1986. There was testimony that R.B. had sexual relations during the statutory conception period with both her husband and J.F. Both R.B. and T.B., however, insisted that T.B. was the biological father despite the absence of a blood test. Both also urged the court to terminate the paternity proceedings. Both testified to the closeness of their family unit and their immersion in family oriented activities.

R.B. stated that he had resolved the marital difficulties that had led to his wife's affair with J.F. and that the presence of the child in their lives played a large part in the ultimate success of their marriage. R.B., one-quarter American Indian, also testified that as his child, she stood to receive extensive governmental entitlements over the course of a lifetime including medical, dental and educational benefits.

T.B. described previous attempts by J.F. to pressure her to maintain a relationship between them, said he had threatened to disclose their affair to her husband and had come to the home on occasion uninvited. She described an incident wherein she had an argument with J.F. on the telephone over her claim that he was not the father. She said he told her to remain on the line, and then he stepped outside his home and fired a rifle in the air. She interpreted his action as a threat.

J.F. acknowledged the shooting incident, but denied any attempt to threaten. He characterized his behavior as an attempt "to see how she would react." J.F. also conceded that he had illegally used marijuana, speed, cocaine and Valium, but stated that it was long before his relationship with R.B.

J.F. presented the opinions of a psychologist, psychiatrist and therapist/social worker. They advanced their belief that it was in a child's best interests to know his or her biological parent and that J.F. had no desire to interfere with the family unit by pursuing his action here.

T.B. and R.B. each testified that their love for each other and for T.R.B. would not diminish if J.F. were legally declared the child's father.

The preceding evidence is sufficient to support the trial court's finding that further paternity proceedings could disrupt an intact functioning family unit and thus be contrary to T.R.B.'s best interests. First, the family expressions of intent to maintain a deep affection for each other and for T.R.B. merely divulges a present belief and not necessarily an accurate or infallible forecast. Both of the presumptive parents expressed strong opposition to J.F.'s attempts at future visitation. This resistance, together with their insistence that R.B. was the biological father, suggests a strong potential for

future struggles, especially when inevitable conflicts in plans and schedules arise. The potential loss of entitlements is a legitimate factor in the decision to dismiss this action, as is the court's reference to J.F.'s prior lifestyle and misbehavior.

Further, the court need not accept the expert's opinions and, in fact, gave cogent reasons for rejecting them. One of the experts had never met R.B., T.B. or the child. Another strongly implied that paternity should always be disclosed to a child to permit it to cope with its true identity. The court noted that the impact of a disclosure of illegitimacy to a child and its legal consequences are best decided on a case-by-case basis and not on psychiatric abstractions. The third expert was J.F.'s therapist and social worker. Much of her testimony focused on what was best for J.F. Further, as the trial court observed, she analogized what was best for the child here to what is generally best for a child in an adoption. The adoption analogy is flawed. Adoptive parents approach the questions of disclosure to the child and visitation with no potential illusions about their own biological ties. Visitation with an adopted child is voluntary and not through court order as is the case in a paternity proceeding.

The trial court's finding based on the totality of the evidence that a paternity action would disrupt the family unit here was not clearly erroneous. The conclusion that such a disruption would not be in the best interests of the child was a valid conclusion based upon the court's findings.

*By the Court.*—Order affirmed.