STATE of Wisconsin EX REL. David M. BLISS, Petitioner-Appellant,

v.

WISCONSIN RETIREMENT BOARD, Respondent-Respondent.

Court of Appeals

*No. 97–1639. Submitted on briefs November 10, 1997.—Decided January 8, 1998.*

(Also reported in 576 N.W.2d 76.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *James G. Schernecker* of *Action Law, S.C.,* of Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *L. Jane Hamblen*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

Before Vergeront, Roggensack and Deininger, JJ.

DEININGER, J. David Bliss appeals an order affirming a decision of the Wisconsin Retirement Board to uphold the denial of his application for disability benefits under the Wisconsin Retirement System. Bliss claims the Board wrongly interpreted § 40.63(1)(c), STATS.,[1] to require as a condition for his receipt of a disability annuity, that his employer certify to the Board that he was terminated from employment because of a disability. Bliss also argues that, even if the Board's statutory interpretation is correct, it erred in finding his employer was "reasonable and correct" in certifying that a reason other than disability was the cause of Bliss's termination. We conclude the Board's interpretation of the statute is entitled to great weight

---

[1] Section 40.63(1)(c), STATS., is set forth in part (b) of our analysis below.

deference from a reviewing court and is not unreasonable. We further conclude that the Board's determination that the employer's certification was reasonable and correct is supported by substantial evidence in the record. Accordingly, we affirm the circuit court order.

## BACKGROUND

Bliss was employed as a police officer for the City of Beloit from January 22, 1988, until July 2, 1993, during which time he was a participating employee under the Wisconsin Retirement System (WRS). In March 1993, the Beloit Chief of Police filed a complaint with the Beloit Police and Fire Commission, charging Bliss with numerous violations of police department regulations. Bliss was suspended with pay while the Commission acted on the charges.

Bliss was present, with counsel, for the first two sessions of the Commission's hearing on April 21 and 22, 1993. He gave testimony and was cross-examined, and his counsel cross-examined numerous other witnesses who testified on behalf of the Police Chief. Neither Bliss nor his counsel appeared, however, on May 18, 1993, for the scheduled continuation of the hearing. Bliss's counsel had sent the Commission's counsel a report from a psychiatrist indicating that Bliss was being treated for a mental or emotional condition and would be unable to participate in the hearings for at least thirty days. The Commission continued the proceedings until June 28, 1993, and ordered Bliss to undergo an independent evaluation by a psychologist designated by the Commission.

Neither Bliss nor his counsel appeared before the Commission on June 28, 1993. The Commission considered the report from the psychologist who had been

appointed to examine Bliss. That examiner indicated that Bliss could participate in the proceedings, and the Commission had received no further evaluations from Bliss's treating psychiatrist to indicate that he continued to be unable to participate. Accordingly, the Commission decided to proceed with the hearing on June 29th even though Bliss and his counsel were absent. The Commission received additional testimony, deliberated in closed session and ultimately issued a decision and order discharging Bliss "for the good of the [s]ervice" because of his violations of police department rules and regulations. The Commission received no evidence relating Bliss's condition or the treatment he was receiving in April through June of 1993, to the conduct which had resulted in the disciplinary action against him. The only evaluations presented to the Commission were for the purpose of determining whether Bliss was able to attend the continued proceedings. The record does not indicate whether Bliss sought court review of the Commission's decision to terminate him for cause.

Prior to the Commission's order discharging him on July 2, 1993, Bliss contacted the Department of Employee Trust Funds (DETF) to inquire about a disability benefit under the WRS, and he began the application process. In support of his application, Bliss filed medical reports from two physicians indicating that he was "totally and likely to be permanently disabled for the performance of the duties of any position involving substantial gainful activity." In October 1993, the City of Beloit submitted its "Employer Disability Certification" form indicating that "[t]he applicant's employment ceased for a reason other than disability." On October 25, 1993, the DETF notified Bliss that his application for a disability annuity had

been denied because his "employer did not certify [his] termination was due to disability." (DETF did not dispute that Bliss met the other requirements of § 40.63(1), STATS., for receiving a disability annuity: sufficient years of service under paragraph (1)(a); and certification by two licensed physicians, approved by DETF, that Bliss was "unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment" under paragraphs (1)(b) and (d).)

Bliss appealed the DETF disability benefit denial to the Wisconsin Retirement Board. On October 6, 1995, a hearing examiner conducted a hearing on the appeal. The Board subsequently adopted the examiner's proposed findings and conclusions. The Board determined that Bliss's suspension with pay during the Commission proceedings was not a "leave of absence" for purposes of § 40.63(1)(c), STATS., and that the DETF correctly denied his disability application because Bliss's employer had not certified that his termination of employment was because of a disability. The Board also determined that the City's certification of a nondisability reason for Bliss's termination was "reasonable and correct." The Board thus affirmed the DETF's denial of benefits.

Bliss commenced this action to obtain certiorari review of the Board's action under § 40.08(12), STATS.[2]

---

[2] Section 40.08(12), STATS., provides that "any action, decision or determination of the . . . Wisconsin retirement board . . . shall be reviewable only by an action for certiorari in the circuit court for Dane county that is commenced by any party to the administrative proceeding, including the department, within 30 days after the date on which notice of the action, decision or determination is mailed to that party, and any party to the certiorari proceedings may appeal the decision of that court."

The circuit court affirmed the Board's order, and Bliss appeals the circuit court's order.

## ANALYSIS

*a. Standard of Review*

■

On certiorari, we review the Board's action independently of the trial court. *State ex rel. Whiting v. Kolb*, 158 Wis. 2d 226, 233, 461 N.W.2d 816, 819 (Ct. App. 1990). Our review is limited to determining whether the Board kept within its jurisdiction; whether it acted according to law; whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and whether the evidence was such that it might reasonably make the order or determination in question. *Id*. Bliss challenges the Board's action on the second and fourth review criteria, claiming that the Board misapplied the law and that the evidence in the record fails to support the Board's determination.

■

We are not bound by an agency's legal conclusions, *DHSS v. LIRC*, 159 Wis. 2d 300, 309, 464 N.W.2d 74, 77 (Ct. App. 1990), and we will review its conclusions of law de novo when the case is one of first impression. *Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 245–46, 493 N.W.2d 68, 73–74 (1992). Bliss argues that interpreting § 40.63(1)(c), STATS., is a matter of first impression and thus our review should be de novo. In certain situations, however, we will defer to an agency's interpretation of a statute. *State ex rel. Parker v. Sullivan*, 184 Wis. 2d 668, 699, 517 N.W.2d 449, 460–61 (1994). The Board asks us to accord "great weight" deference to its interpretation of § 40.63(1)(c), which we

232

may do if: (1) the legislature has charged the agency with the duty of administering the statute; (2) the agency's interpretation is one of long-standing; (3) the agency used its expertise or specialized knowledge in forming the interpretation; and (4) the interpretation of the agency will provide uniformity and consistency in the application of the statute. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98, 102 (1995).

We conclude that the Board's interpretation of the statutory eligibility requirements for a disability benefit under the WRS is entitled to great weight deference from a reviewing court. The legislature has charged the Board with the duty of administering § 40.63, STATS., by, among other things, deciding appeals from DETF determinations regarding disability annuities for non-teacher participants. *See* § 40.03(8)(f), STATS. The interpretation of § 40.63(1)(c) adopted by the Board is based on its expertise and specialized knowledge regarding disability benefit determinations, and the interpretation provides uniformity and consistency in the application of the statute. These factors are evidenced by the existence of an administrative rule which acknowledges that the denial of a disability annuity may be premised solely on "the absence of an employer certification that the employe's leave of absence or termination is the result of [a] disability." WIS. ADM. CODE § ETF 11.12(1)(d)1. *See* §§ 40.03(2)(i) and (8)(d) (Retirement Board approves or rejects all administrative rules that relate to non-teacher WRS participants); *Jicha v. DILHR*, 169 Wis. 2d 284, 292–93, 485 N.W.2d 256, 259 (1992) (an agency gains experience and expertise concerning a statute through the rulemaking process).

233

We also conclude that the Board's interpretation of § 40.63(1)(c), STATS., is one of long standing, in part because of the existence of the administrative rule noted above. While there are apparently no reported cases where the Board has interpreted § 40.63(1)(c) on facts that are identical or substantially similar to those in Bliss's case, that is not the test we apply in determining whether an agency's ruling is of long standing or one of first impression. *Barron Elec. Coop. v. PSC*, 212 Wis. 2d 752, 764, 569 N.W.2d 726, 732 (Ct. App. 1997). Rather, when considering the level of deference we should accord to an agency's statutory interpretation, we look to "the agency's experience in administering the particular statutory scheme." *Id.* Here, the Board has reviewed disability benefit determinations under the present statutory language since 1982. *See* 1981 Wis. Act 96, § 24. We will therefore accord its interpretation of the statute great weight deference. *CUB v. PSC*, 211 Wis. 2d 537, 551–52, 565 N.W.2d 554, 561 (Ct. App. 1997) (the presence of administrative rules and a substantial history of administering a statute establish a long-standing interpretation entitled to deference).

Since we accord the Board's interpretation of § 40.63(1)(c), STATS., great weight deference, we will sustain it if it is "merely . . . reasonable," and the burden is on Bliss to show that the Board's interpretation is unreasonable. *Harnischfeger*, 196 Wis. 2d at 661, 539 N.W.2d at 102. "An interpretation is unreasonable if it directly contravenes the words of the statute, it is clearly contrary to legislative intent or it is without rational basis." *Id.* at 662, 539 N.W.2d at 103.

*b. The Board's Interpretation of § 40.63(1)(c), STATS.*

Section 40.63(1), STATS., provides, in relevant part, as follows:

> [A]ny participating employe is entitled to a disability annuity from the Wisconsin retirement system ... if, prior to attaining his or her normal retirement date, all of the following apply:
>
> . . . .
>
> · (c) The employe is not entitled to any earnings from the employer and the employer has certified that it has paid to the employe all earnings to which the employe is entitled, that the employe is on a leave of absence and is not expected to resume active service, or that the employe's participating employment has been terminated, because of a disability as described in par. (b) and as a consequence the employe is not entitled to any earnings from the employer.

The parties agree that the first of two requirements set forth in § 40.63(1)(c), STATS., for Bliss to be eligible for a disability annuity is that he "is not entitled to any earnings from [his] employer." There is also no dispute that Bliss met that requirement after his termination on July 2, 1993. The parties disagree, however, with respect to how the second requirement of the paragraph should be interpreted. The Board maintains the second requirement of § 40.63(1)(c) is that Bliss's employer must certify to *two* things: (1) "that it has paid to [Bliss] all earnings to which [he] is entitled"; and (2) that Bliss is "on a leave of absence and is not expected to resume active service, or that [his] participating employment has been terminated, because of a disability."

Bliss argues that the Board's interpretation contravenes the language of the statute in that it "plainly" requires the employer to make only *one of three* alternative certifications: either that it has paid Bliss all earnings to which he is entitled, or that he is on leave of absence from which he is not expected to return, or that his employment was terminated because of a disability. He claims that only the third alternative is linked causally to a disability, and that if an employer simply certifies that it has "paid to the employee all earnings to which the employee is entitled," no more is required. In support of his argument, Bliss relies on the placement of the disjunctive "or" as requiring the language to be read as providing three co-equal alternatives, instead of the Board's "one plus either two or three" interpretation.

██

The Board counters that it makes no sense to read the statute as Bliss does, since then the phrase "because of a disability" would be surplusage. That is, a terminated employee would always meet the first alternative once he or she had received a final paycheck, and there would be no reason to ever have an employer certify that the employee was on indefinite leave because of a disability or had been terminated because of disability. We conclude that even if Bliss's proposed construction were plausible, he at best raises an ambiguity, not a showing that the Board's interpretation directly contravenes the words of the statute. And, "[i]f the statute is ambiguous, an agency's interpretation cannot, by definition, be found to directly contravene it." *Harnischfeger*, 196 Wis. 2d at 662, 539 N.W.2d at 103.

Bliss does not argue that the Board's interpretation is contrary to legislative intent, and the Board

cites legislative history in support of its claim that its interpretation of § 40.63(1)(c), STATS., is consistent with the legislature's intent. Prior to 1982, a predecessor statute provided as follows:

> The participating employer shall certify to the board that the participating employe is unable to continue in employment because of a total disability of such a nature as to reasonably prevent performance of the duties of any position and as a consequence is not entitled to any earnings from such employer.

Section 41.13(2)(a)1, STATS. (1979–80). The Board also claims that a rational basis for its interpretation may be found in both the express language of § 40.63(1)(c), and in the following administrative rule:

> 1. Disability; employer certification. Where the appeal is of a determination denying a disability annuity under s. 40.63, Stats., and the sole basis of the denial was the absence of an employer certification that the employe's leave of absence or termination is the result of the disability, the decision shall include a finding whether the employer's negative certification or failure to certify was reasonable and correct. If the employer's action was unreasonable or incorrect, the decision shall include an order to the employer to make the certification and an order to the department to process the disability application when the certification is received.

WIS. ADM. CODE § ETF 11.12(1)(d)1. *See UFE Inc. v. LIRC*, 201 Wis. 2d 274, 283, 548 N.W.2d 57, 61 (1996) (If a statute contains ambiguities, agency rules interpreting the statute may be consulted for guidance on the proper interpretation.).

We therefore conclude that the Board's interpretation of § 40.63(1)(c), STATS., to condition disability benefit eligibility on the City's certification that Bliss was terminated (or on indefinite leave) because of a disability, does not directly contravene the words of the statute. Bliss has not shown the interpretation to be contrary to legislative intent or without a rational basis. The Board's interpretation of the statute is thus reasonable. The City's certification that it had paid Bliss all earnings to which he was entitled is not sufficient, in itself, to satisfy the statute.

Bliss also argues that when he first applied for the disability benefit while he was suspended with pay, he was on "leave of absence." Thus, he asserts that he met the second alternative under his interpretation of the statute, which would also not require a certification that the leave was "because of a disability." The Board concluded that Bliss's suspension with pay was not a "leave of absence" as defined by § 40.02(40), STATS.[3] We need not address the issue, however. There is no dispute that at the time DETF acted on his application, Bliss's employment with the City had permanently ended. The dispositive issue is whether, under § 40.63(1)(c), STATS., the City's failure to certify that it terminated Bliss because of a disability, was fatal to Bliss's application, and we have concluded that it is. We would reach the same conclusion if Bliss had been on an indefinite leave of absence which the City failed to certify as being caused by a disability.

---

[3] Section 40.02(40), STATS., defines "leave of absence" to mean "any period during which an employe has ceased to render services for a participating employer and receive earnings and there has been no formal termination of the employer-employe relationship."

### c. Determination that City's Certification was "Reasonable and Correct"

██

Bliss also challenges the Board's determination that the certification by the City of Beloit that it terminated Bliss's employment for a reason other than disability, was "reasonable and correct." On certiorari review, we must uphold the Board's determination if it is supported by substantial evidence; the test is not whether a preponderance of the evidence supports the Board's determination but whether reasonable minds could arrive at the same conclusion reached by the Board. *State ex rel. Palleon v. Musolf*, 120 Wis. 2d 545, 549, 356 N.W.2d 487, 489 (1984).

The sole basis cited by the DETF for its denial of benefits was the City's certification that Bliss was terminated for a reason other than disability. The Board was required by rule, therefore, to make a finding "whether the employer's negative certification . . . was reasonable and correct." WIS. ADM. CODE § ETF 11.12(1)(d)1. Neither the statute nor the rule, however, requires the Board to undertake a de novo inquiry regarding the cause of Bliss's termination from employment. Bliss's appeal of the denial of his application for a disability annuity to the Board is thus not intended to provide a forum for Bliss to relitigate the basis for his discharge by the Beloit Police and Fire Commission. Rather, we agree with the Board that under § 40.63(1)(c), STATS., and WIS. ADM. CODE § ETF 11.12(1)(d)1, the City's negative certification "effectively creates a presumption that [Bliss] was not terminated because of his disability."

We conclude that WIS. ADM. CODE § ETF 11.12(1)(d)1, requires the Board to review the City's certification according to the same standard by which we review the Board's determination, which, as we have discussed, is the "substantial evidence" test: whether reasonable minds could arrive at the same conclusion as the employer did. *See Palleon*, 120 Wis. 2d at 549, 356 N.W.2d at 489.

Bliss asserts that there is no substantial or credible evidence in the record to support the Board's determination that the City's certification was reasonable and correct. We disagree. The Police and Fire Commission's decision and order, transcripts of all of its proceedings on the complaint against Bliss, as well as the numerous exhibits it received, are all contained in the record that was before the Board and that is now before us. These items show that the Commission discharged Bliss for his conduct involving numerous violations of police department rules and regulations, regarding which ample evidence was presented to the Commission.

Bliss argues, however, that because the record also shows Bliss sought treatment for a mental illness after the Chief of Police filed charges against him, the Board should have concluded that the illness was responsible for his unacceptable conduct, and thus his discharge. Again, we disagree. The only evidence presented to the Commission regarding Bliss's mental or emotional condition related to whether Bliss was then capable of participating in the Commission's proceedings. No testimony or reports were received showing that a disability had triggered his misconduct or rendered

him permanently unsuitable for continued employment. The Board reviewed the substantial record which supports the Commission's discharge order, and noted the absence of "any medical opinion concerning whether [Bliss's] alleged misconduct was the result of any then-existing mental impairment."

Even if there were evidence in the record to support the inference advanced by Bliss that a mental impairment contributed to his discharge, our duty is to determine whether there is evidence to sustain the determination made by the Board, not an alternative determination it might have made. *Cf. In re T.R.B.*, 160 Wis. 2d 840, 842–43, 467 N.W.2d 553, 554 (Ct. App. 1991). And, as we have concluded above, the scope of the Board's review of the City's certification is no broader than is ours when we review the Board's determination. Quite simply, there was ample evidence in the record before the Board from which "reasonable minds" could conclude that the City's certification that Bliss had been terminated for a reason other than disability, was reasonable and correct. Just as we may not substitute our judgment for that of the Board in weighing the evidence before it, the Board's role was not to substitute its judgment for that of the Beloit Fire and Police Commission. *See, e.g.*, § 227.57(6), STATS.; *CUB v. PSC*, 211 Wis. 2d at 557, 565 N.W.2d at 563–64.

██

Finally, Bliss attempts to raise on this appeal an alleged due process violation arising from the Commission's decision to conclude its proceedings in his absence. This claim, like his substantive attack on the Commission's findings, could have been the subject of a circuit court appeal from the Commission's order taken under § 62.13(5)(i), STATS. The Wisconsin Retirement Board is not empowered to supervise the Beloit Police

and Fire Commission, nor is it the Board's duty to redress any procedural errors the Commission may have committed.[4] The Board may only consider a collateral attack on the Commission's procedures if it can be shown that a procedural error was of such magnitude that the reasonableness or correctness of the City's certification of the reason for Bliss's discharge is called into question. Given the record made by the Commission and provided to the Board, that is not the case here. We will thus not disturb the Board's determination that the City's negative certification was reasonable and correct on the basis of the due process violation alleged by Bliss.

## CONCLUSION

The Board's interpretation of § 40.63(1)(c), STATS., is entitled to great weight deference, and it is not unreasonable. The record contains substantial evidence to support the Board's determination that the City's certification that Bliss was discharged for a reason other than disability, was reasonable and correct. We therefore affirm the circuit court's order upholding the Board's decision and order.

*By the Court.*—Order affirmed.

---

[4] As we have described in the Background section of this opinion, the Commission adjourned its proceedings for over thirty days after receiving a communication from Bliss's treating psychiatrist stating that Bliss would not be able to participate for that length of time. Before electing to continue the proceedings, the Commission considered an independent evaluation which concluded that Bliss was then capable of participating in the proceedings. We express no opinion on the merits of Bliss's due process claim.