IN the MATTER OF the ADOPTION OF R. P. R.: Ronald and Margaret BRANDT, Appellants,

V.

Patricia Riordan WITZLING, Respondent-Petitioner.†

Supreme Court

*No. 79–1875. Argued October 1, 1980.— Decided October 28, 1980.*

(Also reported in 297 N.W.2d 833.)

† Motion for reconsideration denied, with costs, on January 6, 1981.

For the respondent-petitioner there was a brief by *David L. Walther, John Sundquist* and *Walther & Halling* of Milwaukee, and oral argument by *David L. Walther.*

For the appellants there were briefs by *Stephen W. Hayes* and *von Briesen & Redmond, S. C.,* and *Dale P. Gerdes* and *Gutknecht & Gerdes,* and oral argument by *Stephen W. Hayes,* all of Milwaukee.

There were briefs and oral argument by *Stanley F. Hack* of Milwaukee, guardian *ad litem.*

STEINMETZ, J. This is a review of a decision of the court of appeals awarding custody of R.P.R., an infant, to Ronald and Margaret Brandt, the prospective adoptive parents. This decision reversed the order of the trial court which had awarded custody of the infant to petitioner, Patricia Riordan,[1] the biological mother.

Ms. Riordan while pregnant and unmarried, consulted Catholic Social Services concerning possible adoption of the child. The child was born on January 21, 1979, and was immediately placed in a foster home by the Catholic Social Services. The foster home placement was for a period of six weeks and was to precede the beginning of the adoption procedure.

On February 19, 1979, Patricia Riordan telephoned Margaret Brandt and asked her if the Brandts would be interested in an independent adoption of R.P.R. Riordan and Margaret Brandt had been co-employees. The record indicates that Mrs. Brandt knew of Ms. Riordan's pregnancy and that Ms. Riordan knew of the Brandts' desire to adopt a child. There is testimony in the record that Ms. Riordan was interested in placing the child with the Brandts because she was impressed with the Brandts' intellectual, moral and personal life and felt that the child would be brought up in a good environment.

The Brandts consulted with Ms. Riordan, and the decision was made to proceed with the independent adoption of R.P.R. by the Brandts. On March 7, 1979, Patricia Riordan, in cooperation with the Catholic Social Services, transferred physical custody of R.P.R. to the Brandts. On March 14, 1979, pursuant to sec. 48.84

---

[1] While this case was pending before this court, Ms. Riordan married, changing her name to Patricia Riordan Witzling. A motion was granted to change the caption of this case accordingly. To avoid confusion and to conform with the court of appeals opinion, however, the petitioner will be referred to in this opinion as Patricia Riordon.

(1) (a) and (2) (a), Stats.,[2] a hearing was held to execute the written consent of the parents to adoption of the infant by the Brandts. The written consent was signed by Ms. Riordan and the natural father. That court explained the nature of the consent: "You understand that this consent when given is irrevocable, when the child is adopted you can't change your mind?" Judge Elliot Walstead, before whom the consent hearing was held, certified the adoption consent signed by Patricia Riordan. In it the judge certified he had explained to Ms. Riordan that the consent was irrevocable "except that the consent may be withdrawn under certain conditions, before the entry of the order of adoption."

Sec. 48.86, Stats.,[3] provides:

[2] "48.84 **Persons required to consent to adoption.** (1) No adoption of a minor may be ordered without the written consent of the following to the adoption of the minor by the petitioner:

"(a) The parent or parents, if living, provided that consent shall not be required from one whose parental rights have been legally terminated; or

". . .

"(2) (a) The consent required by sub. (1) (a) shall be given in writing before a judge of any court of record, unless the court orders otherwise, after the judge has explained to the parent that such consent is irrevocable, except as provided in s. 48.86, and has examined the parent and is satisfied that the parent gives his consent voluntarily. In the case of a minor parent, his minority shall not be grounds for revoking consent, but a guardian ad litem shall be appointed for him and his consent shall be effective only when concurred in by the written consent of the guardian ad litem."

[3] "48.86 **Withdrawal of consent.** Withdrawal of any consent filed in connection with a petition for adoption hereunder shall not be permitted, except that the court, after notice and opportunity to be heard is given to the petitioner in the adoption proceedings, to the person seeking to withdraw consent and to any agency participating in the adoption proceedings, may, if it finds that the best interests of the child will be furthered thereby, issue a written order permitting the withdrawal of such consent.

"Withdrawal of any consent filed in connection with a petition for adoption hereunder shall not be permitted, except that the court, . . . *may, if it finds that the best interests of the child will be furthered thereby,* issue a written order permitting the withdrawal of such consent. The entry of an order of adoption renders any consent irrevocable." (Emphasis added.)

These proceedings had not proceeded to the entry of an order of adoption when Ms. Riordan moved to withdraw her consent to adoption on August 1, 1979. The hearing before Judge William J. Shaughnessy proceeded and he granted the motion for withdrawal of consent to adoption and awarded custody of R.P.R. to Ms. Riordan. This order was appealed to the court of appeals which reversed Judge Shaughnessy and ordered custody of R.P.R. to the Brandts. That decision is now being reviewed by this court.

The court of appeals ruled Judge Shaughnessy erred in finding sufficient evidence that the natural mother had met her burden of proof for withdrawing her consent to adoption.

The guardian *ad litem,* Attorney Stanley Hack, who had diligently prepared, opined that custody should be given to the Brandts. No matter how thorough his preparation, the responsibility for decision rested only with Judge Shaughnessy.

The issue before the trial court was whether withdrawal of the natural mother's consent to adoption would further the best interests of the child. The trial court answered this issue "Yes."

The issue before the appellate court was whether the findings of the trial court were clearly against the great weight and clear preponderance of the evidence or did the trial court commit a clear abuse of discretion as to

The entry of an order of adoption renders any consent irrevocable."

the order issued. The appellate court answered this issue "Yes."

The controlling review standard is summarized in *Adoption of Randolph*, 68 Wis.2d 64, 74–75, 227 N.W.2d 634 (1975):

"In questions involving the determination of what is in the best interests of the children, whether in an adoption case or a divorce case, it must be recognized that the trial court has the chance to observe the conduct and demeanor of the witnesses, and its determination of the question of what is in the best interests of the children may not easily be overturned by this court. Thus, in *Larson v. Larson*, a divorce case, we said:

" 'This court is firmly committed to the principle that the findings of fact and orders of the trial court concerning the custody of minor children in divorce actions will not be set aside or reversed unless clearly against the great weight and clear preponderance of the evidence, or unless there is a clear abuse of discretion.

" ' "Custody matters are highly discretionary and the rule is well established that the trial court's determination will not be upset in the absence of a clear abuse of discretion." *Belisle v. Belisle* (1965), 27 Wis. (2d) 317, 321, 322, 134 N.W. (2d) 491.

" ' "As has been repeatedly held by this court, the matter of the custody of children in divorce actions is a matter peculiarly within the jurisdiction of the trial court, who has seen the parties, had an opportunity to observe their conduct, and is in much better position to determine where the best interests of the child lie than is an appellate court." *Adams v. Adams* (1922), 178 Wis. 522, 525, 190 N.W. 359; *Hamachek v. Hamachek* (1955), 270 Wis. 194, 202, 70 N.W. (2d) 595.' "

The *Randolph* case also determined that the issue of the best interests of a child is a mixed question of law and fact with the precise determination of such criteria as psychological factors being questions of fact. When there is a mixed question of law and fact, the factual

determinations will not be reversed unless "against the great weight and clear preponderance of the evidence." *Zapuchlak v. Hucal,* 82 Wis.2d 184, 192, 262 N.W.2d 514 (1978).

"[T]he trial judge is the ultimate arbiter of the credibility of the witnesses. . . . Further, when more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn of the trier of fact." *Gehr v. Sheboygan,* 81 Wis. 2d 117, 122, 260 N.W.2d 30 (1977).

In determining where the best interests of the child lie, it is within the province of the trial court to say what weight should be attributed to expert testimony. *Pollock v. Pollock,* 273 Wis. 233, 246, 77 N.W.2d 485 (1956). In adoption matters, the trial court may properly rely upon opinions of expert witnesses provided that such opinions are not patently unreasonable. *Adoption of Randolph, supra,* at 75.

A custody award is a determination "within the sound discretion of the trial court." *Johnson v. Johnson,* 78 Wis.2d 137, 143, 254 N.W.2d 198 (1977).

In *Rhodes v. Terry,* 91 Wis.2d 165, 176, 280 N.W.2d 248 (1979), this court stated, " '. . . This court will not find an abuse of discretion if the record shows that discretion was in fact exercised and if the record shows that there is reasonable basis for the trial court's determination.' "

In *Dunn v. Fred A. Mikkelson, Inc.,* 88 Wis.2d 369, 380, 276 N.W.2d 748 (1979), this court stated, "This court will look for reasons to sustain the trial court when the order rests on legal discretion." Sec. 48.86, Stats., gave Judge Shaughnessy the discretion to allow Ms. Riordan to withdraw her consent to adoption, if he felt it in the best interests of R.P.R., which he did.

The court of appeals reversed the trial court finding relying on expert witness, Dr. John Liccione's opinion as to "rejection trauma." That court found the theory to be baseless conjecture, unsupported by any documentary evidence or treatise on the subject. As such the court of appeals held the opinion should not have been allowed into evidence, as a matter of law, since it is impermissible to base a finding on conjecture, unproved assumptions or mere possibilities. A search of the record does not show, as the court of appeals held, that Dr. Liccione admitted that there was no empirical data to support his theory of rejection trauma. The appellate court also found that Dr. Liccione stated he had no personal quantitative study which would provide credibility to his theory, however, the record does not reflect such admission on his part. Dr. Liccione stated his testimony and report, which was received in evidence, was to a reasonable psychological probability. He was not asked to produce or identify empirical supporting data at the trial.[4]

Dr. Liccione testified his opinion was strong since the mother knows the adoptive parents and that they fought over the child's custody. He stated, "The hostility and the corresponding damage to personality func-

---

[4] Rejection theory as testified to by Dr. Liccione:

"Well, the fact remains is that there is a current court involvement in this. The child would know the mother made an extremely valiant aggressive effort to re-establish herself as the custodial parent and that the child—the current adoptive parents fought her against it as if to say you can't go with your mother you're going to come with us. The child will be terribly angry, terribly hurt at the theft of time of the natural mother." This adverse effect would be very profound and this will outweigh any possible harm that would come were the child at eight or nine months to be taken away from the Brandts and given back to the natural mother. [Separation trauma theory.] Dr. Liccione testified, "I am very sure of that."

tioning and the very seriously disturbed parent-child relationships would have a genuine lasting damaging effect on the youngster." ·

The trial judge received this expert opinion and he was correct as to its admissibility. He obviously gave this opinion greater weight than the other expert opinions received on the trial from Drs. Maria Piers, a psychologist, and William Offenkrantz, a psychiatrist and psychoanalyst. This is the duty and discretion of the trial judge—to determine the weight, the convincing power of evidence.

Dr. Piers testified she could not predict the long-term consequences in taking the child from the Brandts and returning the child to the natural mother.[5]

She did state there would be short-term consequences which could be anxiety with possible resulting sleep and feeding disturbances.

Dr. Piers knew of no evidence in literature for Dr. Liccione's "rejection trauma." However, she admitted some others have observed it and it could exist. She admitted she simply didn't know. She varied from labeling the "rejection trauma" as conjecture to admitting it could possibly exist. She thought that since the "rejection trauma" would occur later in a child's life, it was less damaging than experiencing "separation trauma" at an early age.

Dr. Offenkrantz stated the separation trauma to be rough, tough on the child. He did recognize Dr. Liccione's "rejection trauma" and felt it might have a substantial impact on this child.

---

[5] Separation trauma was defined as taking a child of eight to twenty-four months (give or take two months) from the psychological parents and giving the child to the natural parents or any other person.

He could not predict the length of the "separation trauma" and stated he was not a child development expert. He admitted having no professional experience with individuals who had been adopted.

Contrary to the court of appeals' holding, the trial court did not apply a presumption in favor of the natural mother for custody.

It is apparent from Judge Shaughnessy's written opinion that he considered ties to a natural parent as described by this court in several cases. *Adoption of Tachick,* 60 Wis.2d 540, 210 N.W.2d 865 (1973) ; *Adoption of Randolph,* 68 Wis.2d 64, 227 N.W.2d 634 (1975) ; *State ex rel. Lewis v. Lutheran Social Services,* 59 Wis. 2d 1, 207 N.W.2d 826 (1973) ; *Lacher v. Venus,* 177 Wis. 558, 188 N.W. 613 (1922) ; *Ponsford v. Crute,* 56 Wis.2d 407, 202 N.W.2d 5 (1972) ; *LaChappell v. Mawhinney,* 66 Wis.2d 679, 225 N.W.2d 501 (1975).

However, the trial court obviously considered natural parental ties only one factor in this case in determining the best interests of the child. He did not treat it as a presumption. His finding was, "Natural ties of affection between a parent and a child cannot be ignored." He further found, "She [the natural mother] can give natural love and affection and is inclined by ties of blood and affection to raise the child in its best interest." This was not a presumption over the Brandts' recognized qualities of affection in caring for the child. It was merely one of several factors relied on by the trial court.

Judge Shaughnessy made the following critical and controlling findings :

(1) In commenting on the separation trauma—"I am satisfied that any trauma or emotional effect on the child would be of short duration and without long lasting effects."

(2) "The possibility of the rejection trauma compounded by the child obtaining knowledge of all of the facts is most serious."

(3) "However, it would be in the child's best interests if the possibility of rejection trauma did not exist."

(4) The *LaChappell v. Mawhinney* case, *supra*, represents a rejection of the idea of the "rights" to the custody of the child.

(5) "In this case, the best interests of the child would be promoted by living with Patricia." (Riordan)

(6) "The best interests of RPR would be furthered by allowing Patricia Riordan to withdraw her consent."

Judge Shaughnessy then entered an order consistent with his findings. His findings and order were not against the great weight and clear preponderance of the evidence. He did not abuse his discretion and should therefore have been affirmed.

The parties agreed that the appeal of Judge Shaughnessy's order froze all facts to be considered on appeal including R.P.R.'s age at eight and one-half months and Patricia Riordan's marital status.

Judge Shaughnessy in his decision recognized the gravity of his decision and quoted this court's statement of concern in awarding custody by citing *Adoption of Morrison*, 260 Wis. 50, 57, 49 N.W.2d 759, 51 N.W.2d 713 (1951):

" 'This is one of the most difficult cases to decide that comes to our courts, it deals with the human love and affection of the natural mother for her son, that she has suffered the pain of childbirth to bring him into the world—and on the other side, it affects the love of the people, who in their effort, to divide their love with some child, have taken all the legal steps they know, to bring that child into their home as their own, to love,

protect, educate, and make it their legal heir. No one has tried harder to follow the law of adoption, than the petitioners, for the adoption of this child. . . .

" 'No matter how this case is decided, it must cause someone heartaches and tears, . . .' "

*By the Court.*—The decision of the court of appeals is reversed and the order of the circuit court is affirmed.