IN RE the MARRIAGE OF:

Dawn D. HUGHES, Joint-Petitioner-Appellant,

v.

Mark A. HUGHES, Joint-Petitioner-Respondent.

Court of Appeals

*No. 97–3539. Submitted on briefs September 4, 1998.—Decided November 12, 1998.*

(Also reported in 588 N.W.2d 346.)

112

On behalf of the joint-petitioner-appellant, the cause was submitted on the briefs of *Linda Roberson* and *Jane D. Clark* of *Balisle & Roberson, S.C.* of Madison.

On behalf of the joint-petitioner-respondent, the cause was submitted on the brief of *Bonnie S. Musial* of

113

*Julian, Musial & Friedrich. S.C.*, and *John A. Koshalek* of *Koshalek Law Office* of Madison.

Before Eich, Vergeront and Deininger, JJ.

VERGERONT, J. This is a post-divorce proceeding concerning the physical placement of Julie, the minor daughter of Dawn and Mark Hughes. Dawn, who had primary physical placement of Julie pursuant to the divorce judgment, appeals the trial court order denying her request to move Julie to Iowa with her and awarding Mark primary physical placement with final decision-making authority on all legal custody issues. She contends that the trial court erred because it applied § 767.325, STATS., governing modification of placement custody orders, rather than § 767.327, STATS., governing moving with a child from the state, and that the evidence does not support a transfer of primary placement to Mark under § 767.327. She also contends the trial court erred by failing to allow Julie to testify.

We conclude that the trial court correctly applied § 767.325, STATS., the evidence supports the trial court's findings, and the court properly exercised its discretion in deciding to transfer primary placement to Mark and to grant him final decision-making authority. We also conclude the trial court had the discretion to decide whether to permit Julie to testify, and it properly exercised its discretion in not permitting her to do so. We therefore affirm.

## BACKGROUND

Mark and Dawn were divorced on January 1, 1993, after having lived in separate residences since August 1990. Julie, born August 5, 1982, and her older sister

Jennifer, born November 11, 1977, lived with Dawn during this pre-divorce separation, and Dawn was their primary caretaker. Under the terms of the divorce judgment, Dawn was awarded primary physical placement of both children, and Mark had physical placement every other weekend, three hours each Wednesday night, and at least four weeks of vacation time. Dawn and Mark both lived in the Madison area at that time.

During the summer of 1996, Mark requested mediation to resolve problems concerning various aspects of Julie's placement arrangements, but this apparently was not successful. On September 16, 1996, Dawn sent Mark a notice under § 767.327, STATS., advising him of her intent to move with Julie to the Waterloo/Cedar Falls, Iowa area. As Dawn later testified, she graduated from law school in the summer of 1994, and about a year later began looking for jobs in the Madison area. However, she was unable to find employment. In September 1996, she applied for a position as a judicial clerk in Blackhawk County, Iowa, where she and Mark had family and where Jennifer had been born.

Mark timely objected to Dawn's proposed move. Also, on October 16, 1996, he filed a motion to modify physical placement by awarding him primary physical placement, or in the alternative, prohibiting Dawn from moving with Julie outside the State of Wisconsin and increasing his periods of physical placement. While the family court counseling service was conducting a placement evaluation, Dawn requested a temporary order permitting her to move with Julie to Iowa because she had been offered the job. Dawn moved to Iowa, without Julie, to begin the job on December 2, 1996. On February 10, 1997, the court denied Dawn's motion for a temporary order.

The parties agreed to accept the recommendations of the guardian ad litem and the family court counselor for Julie's physical placement pending trial. They recommended that Julie reside primarily with Mark, spending time with Dawn in Iowa on certain weekends and school holidays.

Dawn had requested that Julie be permitted to testify at trial, but the court ruled it would be inappropriate for her to testify. The court acknowledged there was some advantage to hearing from Julie personally, but the court was concerned by the parents' high level of hostility over Julie's physical placement and the difficulty for Julie in testifying about her preferences in front of both parents. The court referred to the suffering that Julie had already experienced from "being torn apart" by the conflicts between her parents. The court noted that a number of people had spoken to Julie about her preferences and would be testifying, so the court would be informed of Julie's views. For the same reasons, the court declined to involve Julie in conversation in chambers.

The trial took place over three days in July 1997, and the parties and guardian ad litem submitted posttrial briefs. The guardian ad litem recommended primary physical placement and final decision-making authority with Mark. The court rendered a lengthy oral decision, followed by written findings of fact and conclusions of law.

The court made the following findings, among others: At the time of divorce, Jennifer and Julie each had a good relationship with Mark, but presently Jennifer is alienated from her father and Dawn was a significant force in the breakdown of that relationship. Dawn's level of hostility toward Mark and her interference in his relationship with their daughters has

increased markedly since the divorce, and there has been a lengthy record of the parties' inability to cooperatively co-parent Julie. Mark has demonstrated an ability to set aside his own needs to make decisions in Julie's best interests but Dawn has consistently shown her inability to do so. Julie has a significant relationship with both parents and it is in her best interest to maintain that. It is much more likely that Julie will have a relationship with both parents if she lives with Mark rather than with Dawn. Dawn's current living situation with a man is not stable whereas Mark's living situation with a woman is stable. Mark appropriately parents Julie and is aware of her social, emotional and academic needs. Julie has made an excellent adjustment to her community and school in Verona and has a close group of friends there. Initially Julie expressed the wish not to decide where she would live, but prior to trial she expressed the wish to various witnesses and in her letter to the court to live with her mother. This expressed preference is more the product of her mother's pressure than Julie's own preference.

After making these findings, the court decided it could rely on either § 767.325, STATS.,[1] the statute gov-

---

[1] Section 767.325, STATS., provides in part:

**Revision of legal custody and physical placement orders.** (1) SUBSTANTIAL MODIFICATIONS.

. . . .

(b) *After 2-year period.* 1. Except as provided under par. (a) and sub. (2), upon petition, motion or order to show cause by a party, a court may modify an order of legal custody or an order of physical placement where the modification would substantially alter the time a parent may spend with his or her child if the court finds all of the following:

a. The modification is in the best interest of the child.

b. There has been a substantial change of circumstances since the entry of the last order affecting legal custody or the last order substantially affecting physical placement.

erning revisions to physical placement orders, or § 767.327, STATS.,[2] the statute governing moving the

2. With respect to subd. 1., there is a rebuttable presumption that:

a. Continuing the current allocation of decision making under a legal custody order is in the best interest of the child.

b. Continuing the child's physical placement with the parent with whom the child resides for the greater period of time is in the best interest of the child.

3. A change in the economic circumstances or marital status of either party is not sufficient to meet the standards for modification under subd. 1.

[2] Section 767.327(1), (2), (3) and (5), STATS., provide:

**Moving the child's residence within or outside the state.** (1) NOTICE TO OTHER PARENT. (a) If the court grants periods of physical placement to more than one parent, it shall order a parent with legal custody of and physical placement rights to a child to provide not less than 60 days written notice to the other parent, with a copy to the court, of his or her intent to:

1. Establish his or her legal residence with the child at any location outside the state.

. . . .

(2) OBJECTION; PROHIBITION; MEDIATION. (a) Within 15 days after receiving the notice under sub. (1), the other parent may send to the parent proposing the move or removal, with a copy to the court, a written notice of objection to the proposed action.

. . . .

(3) STANDARDS FOR MODIFICATION OR PROHIBITION IF MOVE OR REMOVAL CONTESTED. (a) 1. Except as provided under par. (b), if the parent proposing the move or removal has sole legal or joint legal custody of the child and the child resides with that parent for the greater period of time, the parent objecting to the move or removal may file a petition, motion or order to show cause for modification of the legal custody or physical placement order affecting the child. The court may modify the legal custody or physical placement order if, after considering the factors under sub. (5), the court finds all of the following:

a. The modification is in the best interest of the child.

b. The move or removal will result in a substantial change of circumstances since the entry of the last order affecting legal custody or the last order substantially affecting physical placement.

2. With respect to subd. 1.:

child's residence outside the state, and it decided to rely on § 767.325. The court made these conclusions: there has been a substantial change in circumstances since the last physical placement order; Mark has overcome the presumption that continuing the current allocation of decision making and physical placement is in the best interest of Julie; and it is in Julie's best interest to award primary physical placement and final decision-making authority regarding all legal custody issues to Mark.

## STATUTORY STANDARD

Whether to modify a placement or custody order is directed to the trial court's discretion. *See Severson v. Severson*, 71 Wis. 2d 382, 386–87, 238 N.W.2d 116, 120

a. There is a rebuttable presumption that continuing the current allocation of decision making under a legal custody order or continuing the child's physical placement with the parent with whom the child resides for the greater period of time is in the best interest of the child. This presumption may be overcome by a showing that the move or removal is unreasonable and not in the best interest of the child.

b. A change in the economic circumstances or marital status of either party is not sufficient to meet the standards for modification under that subdivision.

3. Under this paragraph, the burden of proof is on the parent objecting to the move or removal.

. . . .

(5) FACTORS IN COURT'S DETERMINATION. In making its determination under sub. (3), the court shall consider all of the following factors:

(a) Whether the purpose of the proposed action is reasonable.

(b) The nature and extent of the child's relationship with the other parent and the disruption to that relationship which the proposed action may cause.

(c) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent.

(1976). We affirm a court's discretionary determination when the court applies the correct legal standard to the facts of record and reaches a reasonable result. *See Kerkvliet v. Kerkvliet,* 166 Wis. 2d 930, 938–39, 480 N.W.2d 823, 826 (Ct. App. 1992). Our task as the reviewing court is to search the record for reasons to sustain the trial court's exercise of discretion. *See Brandt v. Witzling,* 98 Wis. 2d 613, 619, 297 N.W.2d 833, 836 (1980). However, when the contention is that the trial court erroneously exercised its discretion because it applied an incorrect legal standard, we review that issue of law de novo. *Kerkvliet,* 166 Wis. 2d at 939, 480 N.W.2d at 826.

Dawn contends that the trial court erroneously exercised its discretion because it did not apply § 767.327, STATS., but instead erroneously applied § 767.325, STATS. According to Dawn, since she filed notice of her intention to move before Mark filed his motion for a change in physical placement, the court could proceed only under § 767.327. Under § 767.327(3)(a)2.a, she contends, the court could award Mark primary physical placement only if Mark rebutted the presumption of continued primary placement with her by showing that the move "is unreasonable and not in the best interest of the child." Dawn argues that the court did not find the purpose of her move to be unreasonable, *see* § 767.327(5)(a), and it rejected her proposal to modify the current placement schedule to compensate Mark for the weekdays he would miss if Julie moved to Iowa by increasing her placement with him at other times, *see* § 767.327(5)(c). Therefore, according to Dawn, the court erroneously exercised its discretion in transferring primary placement.

Mark responds that the trial court could properly apply § 767.325, STATS., because he moved for a modifi-

cation of the physical placement order based on circumstances unrelated to the move—the change in Julie's developmental needs and Dawn's interference in his relationship with both their older daughter and Julie. He contends that Dawn filed the notice of intent to move because she knew Mark intended to request a change in physical placement,[3] and it would be unreasonable to construe § 767.327, STATS., to deprive him of all relief under § 767.325 simply because Dawn filed her motion before he filed his.

Resolution of this issue requires that we construe the statutes involved. The aim of all statutory construction is to ascertain the legislature's intent. *Kerkvliet*, 166 Wis. 2d at 939, 480 N.W.2d at 826. In determining that intent, we first consider the language of the statutes. *Id.* We also bear in mind that statutes relating to the same subject matter should be read together and harmonized if possible. *See id.*

Section 767.325, STATS., states that it is "applicable to modifications of legal custody and physical placement orders," "[e]xcept for matters under s. 767.327 or 767.329 [revisions by stipulation]." This means if one parent contemplates a move, that parent must proceed under § 767.327, STATS., and § 767.327(3) then governs placement and custody modification if the move is contested. *See* § 767.327(3)(a)1 (permitting modification if it is in the best interest of the child and the move results in a substantial change in circumstances). However, neither § 767.325 nor § 767.327 states that, once a parent has provided notice of a move

---

[3] Dawn disputes that this was her motive. Because we decide that the trial court could properly apply § 767.325, STATS., even though Dawn filed notification of the proposed move before Mark filed his motion to modify physical placement, resolution of this factual dispute is unnecessary.

under § 767.327, the parent opposing the move may not bring a motion for a revision under § 767.325 based on a substantial change in circumstances other than the proposed move.

Dawn points to language in our decision in *Kerkvliet* in which we stated: "Section 767.325, STATS., concerns modifications in custody and primary physical placement *in the absence of a removal*." *Kerkvliet*, 166 Wis. 2d at 944, 480 N.W.2d at 828 (emphasis included). We do not agree that *Kerkvliet* supports Dawn's position.

In *Kerkvliet*, we held that when a move is contested, the court is not limited to the three factors in § 767.327(5), STATS., in determining whether modification of physical placement is in the child's best interest. *Id.* at 941–42, 480 N.W.2d 828–29. These three factors are: reasonableness of the purpose for the move, effect on the child's relationship with the other parent, and availability of alternative arrangements to foster that relationship. *See* § 767.325(5), STATS. These factors, we held, are in addition to "the range of otherwise relevant 'best interest of the child' considerations set forth in § 767.24, STATS.,[4] and other statutes concerning aspects of custody." *Kerkvliet*, 166 Wis. 2d at 942, 480

---

[4] Section 767.24, STATS., provides in part:

(5) FACTORS IN CUSTODY AND PHYSICAL PLACEMENT DETERMINATIONS. In determining legal custody and periods of physical placement, the court shall consider all facts relevant to the best interest of the child. . . . The court shall consider the following factors in making its determination:

(a) The wishes of the child's parent or parents.

(b) The wishes of the child, which may be communicated by the child or through the child's guardian ad litem or other appropriate professional.

(c) The interaction and interrelationship of the child with his or her parent or parents, siblings, and any other person who may significantly affect the child's best interest.

N.W.2d at 828 (footnote added). We concluded that the trial court did not erroneously exercise its discretion in failing to transfer primary placement to the objecting parent, even though the factors in subsec. (5) militated against the move, because the other best interest factors favored maintaining primary placement with the moving parent. *Id.* at 933–34, 480 N.W.2d at 824.

We made the statement on which Dawn relies in responding to the argument of the objecting parent that consideration of all the best interest factors rendered the "three factors in the removal statute a nullity" because the objecting parent will never be able to stop a move unless he or she has grounds for a modification under § 767.325, STATS. *Kerkvliet,* 166 Wis. 2d at 943–44, 480 N.W.2d at 828. We disagreed with this assertion, explaining that § 767.325 concerns revisions to physical placement in the absence of a move, and § 767.327, STATS., adds additional considerations for a revision of custody in a move situation. *Kerkvliet,* 166 Wis. 2d at 944, 480 N.W.2d at 829. Because the objecting parent was not asserting

(d) The child's adjustment to the home, school, religion and community.

(e) The mental and physical health of the parties, the minor children and other persons living in a proposed custodial household.

(f) The availability of public or private child care services.

(g) Whether one party is likely to unreasonably interfere with the child's continuing relationship with the other party.

(h) Whether there is evidence that a party engaged in abuse, as defined in s. 813.122 (1) (a), of the child, as defined in s. 48.02 (2).

(i) Whether there is evidence of interspousal battery as described under s. 940.19 or 940.20 (1m) or domestic abuse as defined in s. 813.12 (1) (a).

(j) Whether either party has or had a significant problem with alcohol or drug abuse.

(k) Such other factors as the court may in each individual case determine to be relevant.

grounds for modification under § 767.325—indeed was expressly not doing so—we had no occasion to consider the interaction between §§ 767.325 and 767.327 in circumstances such as those presented in this case.

Dawn also relies on the rule of statutory construction that where two statutes conflict, the more specific prevails over the general. *See Fred Rueping Leather Co. v. City of Fond du Lac*, 99 Wis. 2d 1, 5, 288 N.W.2d 227, 230 (Ct. App. 1980). However, this rule does not apply unless there is a conflict between the two provisions. *Town of Nasewaupee v. City of Sturgeon Bay*, 146 Wis. 2d 492, 495, 431 N.W.2d 699, 700 (Ct. App. 1988). Sections 767.325 and 767.327, STATS., do not conflict. The latter applies where the only potential substantial change in circumstance is the proposed move; and the former applies when the moving party asserts that circumstances other than those associated with a proposed move have changed. Both statutes establish a rebuttable presumption that continuing the child's physical placement with the parent with whom the child spends the greater period of time is in the child's best interest, and both require that the court determine modification is in the child's best interest, in addition to determining there is a substantial change in circumstance. *See* §§ 767.325(1)(b) and 767.327(3)(a). The difference is that under § 767.327 the move is the basis for the requisite substantial change in circumstances, whereas § 767.325 does not contain that limitation. *Compare* § 767.327(3)(a)1.b *with* § 767.325(1)(b)1.b.

Since the statutory language itself does not impose the limitation Dawn argues for, we might end our analysis there. However, we also observe that the result of her construction is that a trial court would not be able to consider factors in addition to those surrounding the

proposed move that favor a modification in placement or custody simply because the parent proposing to move has filed a notification under § 767.327, STATS., before the other parent filed a motion under § 767.325, STATS. This construction is unreasonable because it makes the timing of the filings the decisive factor, and that bears no relationship to the best interest of the child.

██

We conclude that the trial court was not limited to deciding, under § 767.327(3)(a)2.a, STATS., whether Mark overcame the presumption with evidence that the move was unreasonable and not in Julie's best interest. Rather, once Mark filed a motion to modify physical placement based on circumstances other than the move, the trial court could consider all relevant circumstances, including but not limited to the move, in deciding whether to modify physical placement and custody under § 767.325(1)(b), STATS. Mark did have to rebut the presumption that continuing primary physical placement with Dawn was in Julie's best interest. *See* § 767.325(1)(b)2. However, he was not limited to evidence concerning the three factors in § 767.327(5), and the court could consider all relevant circumstances in deciding whether Mark did rebut that presumption. We therefore reject Dawn's argument that because the court did not find that Dawn's move was unreasonable, it erred in transferring primary physical placement to Mark.[5]

---

[5] Because Mark filed a motion to modify custody, we need not decide whether, if he had not done so, the court could have modified physical placement because of circumstances unrelated to the move. Dawn argues that the court may modify placement for custody under § 767.327(3)(a)2.a, STATS., only if the opposing parent rebuts the presumption by showing that

## SUFFICIENCY OF THE EVIDENCE

Dawn contends the evidence was not sufficient to rebut the presumption that it is in Julie's best interest to continue primary placement with her. She challenges the court's reliance on the testimony of the court-appointed psychologist and the family court counselor, and many of the court's findings and conclusions concerning the parties' personalities, parenting abilities, and their relationship with Julie. We conclude the trial court's findings are supported by the evidence, and its findings support its determination that there has been a substantial change in circumstances and it is in Julie's best interest for Mark to have primary physical placement and final decision-making authority.[6]

In addition to the testimony of Dawn, Mark, the woman with whom Mark lives, Julie's friends and a counselor at Julie's school, the court heard testimony of two psychologists and the family court counselor. Lorraine Broll, the court-appointed psychologist, interviewed and conducted various tests on Dawn,

---

the move is unreasonable and not in the best interest of the child, whereas Mark contends that use of the word "may" ("the presumption may be overcome by a showing that the move or removal is unreasonable and not in the best interest of the child," § 767.327(3)(a)2.a) means that this is only one permissible way, but not the exclusive way, to rebut the presumption.

[6] Because Dawn frames her argument solely in terms of § 767.327(3), STATS., she does not specifically address whether the trial court erred in determining there was a substantial change in circumstances. However, we observe that some of the findings she challenges—relating to Julie's relationship with her parents, and her parents' relationship with each other—go both to a change in circumstance and to Julie's best interest.

Mark and Julie. She prepared a written report concluding that Julie's best interest would be served by remaining in her current school district and having her primary physical placement with Mark. Eileen Breitweiser, the family court counselor who had conducted the placement evaluation and met with Dawn twice, Mark twice and Julie on four occasions, prepared a report after considering Dr. Broll's report. She also recommended that primary placement with Mark was in Julie's best interest. Dr. Beverly Bliss, a psychologist retained by Dawn, reviewed Dr. Broll's report and test data and met with Dawn, but not with Julie or Mark. She did not have an opinion on physical placement but did opine that Dr. Broll's data did not support her conclusion that Julie was alienated from Mark and that Dawn had caused this. She also disagreed with Dr. Broll's assessment that Dawn suffered from a personality disorder, testifying that Dr. Broll's data did not support a diagnosis of a personality disorder for either parent.

Dawn argues that Dr. Broll's psychological analysis regarding various personality traits of herself and Mark was not supported by Dr. Broll's own test data and other evidence, and therefore the trial court erred in relying on it. She also argues that Dr. Broll's testimony concerning parental alienation—in particular, that Jennifer was alienated from Mark, that Dawn had caused this, and that Julie would likely also become alienated from Mark if she were in Iowa with Dawn—lacked both a scientific and a factual basis. And, because Ms. Breitweiser relied on Dr. Broll's report concerning parental alienation, those aspects of Ms. Breitweiser's testimony should have been disregarded by the court. Finally, Dawn argues that Ms. Breitweiser's conclusions were based on incorrect facts

and the court should not have relied on them for that reason as well.

In reviewing a trial court's determination on physical placement and custody, we accept the court's factual findings unless they are clearly erroneous. *See Brandt*, 98 Wis. 2d at 618, 297 N.W.2d at 836; *see also* § 805.17(2), STATS. The trial court, sitting as the trier of fact as it does in a custody dispute, decides the credibility of the witnesses, and, when more than one reasonable inference may be drawn from the credible evidence, we accept the inference drawn by the trial court. *See Brandt*, 98 Wis. 2d at 619, 297 N.W.2d at 836. It is the role of the trial court, not this court, to weigh the evidence, including expert testimony, and resolve conflicts in the evidence. *See id.* The trier of fact may accept certain positions of any expert's testimony while rejecting others. *State v. Owen*, 202 Wis. 2d 620, 634, 551 N.W.2d 50, 56 (Ct. App. 1996). And, while a trial court may properly rely on opinions of expert witnesses in a custody or placement dispute providing that it is not patently unreasonable, *Brandt*, 98 Wis. 2d at 619, 297 N.W.2d at 836, expert testimony is not required on an issue unless it is beyond the knowledge and experience of the average trier of fact. *See State v. Whitaker*, 167 Wis. 2d 247, 255–56, 481 N.W.2d 649, 652 (Ct. App. 1992).

We conclude the trial court did not improperly rely on Dr. Broll's and Ms. Breitweiser's testimony. The trial court explained at length in its oral comments and its written decision how it viewed the testimony of the experts. It found Dr. Broll's evaluation to be thorough and credible and based on significant contact with the parties, and it noted in particular her responses on cross-examination to challenges to the foundation for

some of her conclusions. The court viewed Dr. Bliss' expertise very favorably, but it gave considerably less weight to her opinions than to those of Dr. Broll's because of Dr. Bliss' lack of contact with Julie and Mark and her more limited involvement in the case. The court found Ms. Breitweiser's report on the whole to be thorough and well documented, although it acknowledged that there were discrepancies in certain instances between her factual premises and other evidence. This analysis of the expert testimony is properly within the role of the trial court and is not clearly erroneous.

Moreover, as the court explained, the key evidence in its view was the testimony of the parties. Whether or not the expert testimony on parental alienation was based on a scientifically valid "syndrome," there is other evidence in the record that supports the trial court's findings that Dawn had interfered in Julie's relationship with Mark to Julie's detriment, and that if Julie were to move to Iowa to live with Dawn, that would likely further undermine Julie's relationship with her father. Similarly, whether or not the test data supported Dr. Broll's conclusions regarding Mark's and Dawn's personalities, there was other evidence in the record supporting the court's findings that Mark was able to set aside his own needs and make decisions in Julie's best interest whereas Dawn was not, and that Dawn demonstrated a high level of animosity toward Mark, which had been detrimental to Julie. Dawn challenges these findings and others concerning the nature of Julie's relationship with each parent and Dawn's and Mark's respective parenting abilities. While there was conflicting evidence on many of these points, and conflicting inferences that could be drawn from the

evidence, we are satisfied that the court's challenged findings are not clearly erroneous.

### DECISION NOT TO PERMIT JULIE TO TESTIFY

Dawn contends that the court erred in not allowing Julie to testify. As we understand her position, there are two components: (1) Under § 767.24(5)(b), STATS., the trial court was required to consider Julie's preference in deciding her best interest and therefore was required to take her testimony on this; and (2) Dawn had the right to call Julie as a witness and the court erroneously exercised its discretion in preventing her from doing so. We disagree with Dawn on both points.

One of the factors a court "shall consider" in deciding what is in a child's best interest with respect to placement and custody is: "The wishes of the child, which may be communicated by the child or through the child's guardian ad litem or other appropriate professional." Section 767.24(5)(b), STATS. The plain language of the statute does not require that the child testify to its preference in court, or even that the trial judge communicate in person with the child. Dawn discusses decisions from other jurisdictions in support of her position, but we do not consider them helpful in light of the plain language of our statute.[7] Similarly,

---

[7] Some of the cases Dawn discusses are based on significantly different statutory language. *See, e.g., Duncan v. Duncan*, 528 S.W.2d 806, 808–09 (Mo. Ct. App. 1975). In others, the child was permitted to testify on factual matters, not on his or her parental preference. *See, e.g., Bole v. Bole*, 76 Cal. App. 2d 344, 345–46, 172 P.2d 936, 937 (Cal. Dist. Ct. App. 1946). In others, the courts recognized the decision whether to permit the child to testify was discretionary with the trial court, and found an erroneous exercise of that discretion. *See, e.g., Harris v. Harris*, 461 So. 2d 1332, 1334 (Ala. 1984).

the provisions in Chapter 48 that give certain rights to children twelve years and older in proceedings under that chapter, *see* §§ 48.13(9), 48.20(7) and (8), 48.21(3)(a)–(b), STATS., and the provision in § 880.09(1), STATS., which permits a minor over fourteen to nominate his or her own guardian, are not relevant to the interpretation of the language of § 767.24(5)(b).

Although § 767.24(5)(b), STATS., requires the court to consider the child's preference, it does not require that the court use any particular method to inform itself of the child's preference. We conclude the only reasonable interpretation is that this is left to the court's discretion.

In this case, there was no dispute that, if Julie were to testify, she would testify that she preferred to live with her mother. This was communicated to the court by Julie's guardian ad litem, the testimony of Dr. Broll and Ms. Breitweiser, a letter that Dawn's attorney delivered from Julie to the court which the court read, and the testimony of Julie's friends, whom the court permitted to testify on this point. Dawn argues that Julie should have been permitted to testify because she could have informed the court not only of her preference, which was known, but of her reasons for her preference, thereby demonstrating that her preference was not based on pressure from her mother but on sound reasons of her own. Dawn contends that Julie did not feel that her guardian ad litem or Dr. Broll or Ms. Breitweiser were accurately conveying her (Julie's) position and feelings to the court.

The trial court heard extensive argument on whether Julie should testify and was provided with information relevant to the issue. Mark's attorney made an offer of proof that Dr. Broll would testify that in her opinion Julie should not testify. In addition, the

court had Dr. Broll's report in which she described how Dawn was exerting pressure on Julie to choose primary placement with Dawn. Ms. Breitweiser expressed her opinion that it would be "abuse of this child by the court system" for the court to permit Julie to testify or interview her in chambers, explaining that she had spoken to Julie the day before and in her opinion Julie cannot "emotionally . . . withstand this type of experience." Dawn's counsel made an offer of proof that Dr. Bliss would testify that Julie should be heard in court. The guardian ad litem contended it was not in Julie's best interest to testify, based on incidents described in Dr. Broll's report demonstrating that Dawn had made Julie's preference a "test of loyalty" to her. The guardian ad litem was concerned that if Julie did testify or speak to the court and the court did not continue primary placement with Dawn, Julie would be held responsible by Dawn for not having done enough to persuade the court.

■ The court explained its decision not to permit Julie to testify and not to question her in chambers. Its explanation considered the relevant facts of record and weighed the benefit to the court of hearing from Julie in person against the effects on Julie. The decision it reached was a reasonable one, and we conclude it was a proper exercise of the court's discretion under § 767.24(5)(b), STATS. *Seelandt v. Seelandt*, 24 Wis. 2d 73, 80, 128 N.W.2d 66, 70 (1964), and *Haugen v. Haugen*, 82 Wis. 2d 411, 417, 262 N.W.2d 769, 772 (1978), which Dawn cites, do not persuade us otherwise. In both cases, the supreme court approved the trial court's interview of the child in chambers to determine the child's preference, but nothing in either case supports the conclusion that, based on the record before this

trial court, it was an erroneous exercise of discretion not to do that.

Dawn's second argument is that she has a right to call Julie as a witness because Julie is competent to testify under § 906.01, STATS., which provides: "Every person is competent to be a witness except as provided by ss. 885.16 and 885.17 or as otherwise provided in these rules." The trial court rejected this argument, explaining that Julie was competent to testify, but that did not compel the court to permit her to do so. We agree with the trial court's analysis. As we have already explained, under § 767.24(5)(b), STATS., the trial court had the discretion to determine how to inform itself of Julie's preference. That includes the discretion not to permit Julie to testify as a witness for one parent or the other, if the court determines that it is not in Julie's best interest to do so. The general rule on competency of witnesses permits Julie to testify as an evidentiary matter; it does not remove or negate the trial court's discretion in the particular circumstances of a custody or placement dispute to decide that it is not in the child's best interest to testify to the child's preference on placement or custody.

We conclude the trial court properly exercised its discretion in denying Dawn's request to have Julie testify concerning her preference on her placement and in deciding it would not question Julie in chambers on her preference.

*By the Court.*—Order affirmed.